Paragraphs contained herein. Franchisor reserves the right to assign, pledge, hypothecate or transfer this Agreement, provided that such assignment, pledge, hypothecation or transfer shall not affect materially the rights and privileges granted to Franchisee herein.

### 29. EXCLUSIVE PROPERTY

The form and content of this Agreement and the P&P Manual are the exclusive property of Franchisor and may not be reproduced in whole or in part by Franchisee or others, without the prior written consent of Franchisor.

### 30. ADDITIONAL REPRESENTATIONS

Franchisee makes the following additional warranties and representations:

**A.** Franchisee is a **corporation** (partnership, corporation or sole proprietorship). If Franchisee is an entity that issues capital stock or certificates of interest ownership, Franchisee shall be required to place the following legend on all certificates: "THE TRANSFER OF THIS STOCK/INTEREST IS SUBJECT TO THE TERMS AND CONDITIONS OF THAT CERTAIN FRANCHISE AGREEMENT DATED _____ BETWEEN _____ AND CENTURY 21 REAL ESTATE CORPORATION REFERENCE IS MADE TO SUCH FRANCHISE AGREEMENT AND THE RESTRICTIVE PROVISIONS CONTAINED THEREIN." Franchisee shall use its best efforts to place said legend on any previously issued stock or certificates.

**B.** If Franchisee is a corporation, limited liability company, or partnership, there is set forth below the name and address of each general partner and each limited partner of the partnership or of each shareholder in the Franchisee:

| Name: | Percentage Interest*: |
|---|---|
| John W. Schlendorf Jr. | 25% |
| Susanna Schlendorf | 25% |
| Sereta Churchill | 50% |

*As to a corporation, this figure shall indicate the percent owned of any class of outstanding stock of the corporation. As to a limited liability company, this figure shall indicate the interest owned of any class of membership. As to a partnership, this figure shall indicate the percent owned in the capital and/or profits of the partnership.

**C.** The address where Franchisee's records are to be maintained is:

**1983 Second Street, Livermore, CA 94550**

**D.**    The full name and business address of Franchisee's Responsible Broker is:

**John W. Schlendorf Jr. - 1983 Second Street, Livermore, CA 94550**

Franchisee shall not substitute a new Responsible Broker without the prior written consent of Franchisor.

**E.**    Franchisee acknowledges receipt of a Franchise Disclosure Document dated **March 31**, 20**01** from Franchisor on _____, 20**01**, which describes the Franchise to be operated pursuant to the terms of this Agreement. Franchisee acknowledges receipt of a complete copy of this Agreement at least five (5) business days prior to its execution.

## 31.    STATE LAW ADDENDA

**A.**    Illinois Addendum: For a Franchisee who is a resident of Illinois, the following provisions shall apply and shall supersede any provision in this Agreement to the contrary:

**(i)**    The Illinois Franchise Disclosure Act of 1987, as amended (the "Act"), applies to this transaction and supersedes any conflicting provisions of the Franchise Agreement or New Jersey law.

**(ii)**    The first and last sentences of Section 13H are deleted from all Franchise Agreements entered into in Illinois.

**(iii)**    Pursuant to Sections 19 and 20 of the Act, a franchisee must be provided with (i) reasonable notice of default and an opportunity to cure in most instances prior to termination, and (ii) at least six months notice in most instances of non-renewal. Any conflicting provisions of any Franchise Agreement entered into in the State of Illinois will not be given effect.

**(iv)**    The acknowledgments in Section 21 and Section 30F of the Franchise Agreement shall not constitute a waiver of liability under the Act.

**(v)**    The provisions of Section 25 of the Franchise Agreement which designate jurisdiction or venue in a forum outside of the State of Illinois, shall not be effective for franchise agreements entered into in Illinois.

**(vi)**    If any of the provisions of the Franchise Agreement are inconsistent with applicable state law, then the state law shall apply to the extent such law is constitutional and valid as applied.

**(vii)**    All other rights, obligations, and provisions of the Franchise Agreement shall remain in full force and effect. Only the Sections specifically added to or amended by this Addendum shall be affected. This Addendum is incorporated in and made a part of the Franchise Agreement for the State of Illinois.

**B.**    **Minnesota Addendum:**  For a Franchisee who is a resident of Min... following provisions shall apply and shall supersede any provision in this Agree... contrary:

(i)    Minnesota law provides franchisees with certain terminatic... renewal rights.  Minnesota Statutes, Section 80C.14, Subdivisions 3, 4 and 5 requ... certain specified cases, that the franchisee be given 90 days notice of termination (w... cure) and 180 days notice for non-renewal of the Franchise Agreement.

(ii)    No release language set forth in the Franchise Agreement shal... Franchisor or any other person, directly or indirectly, from liability imposed by the laws... franchising of the State of Minnesota.

(iii)    Section 6 of the Franchise Agreement is amended by add... subsection H to read as follows:

"The Minnesota Department of Commerce requires that... Franchisor indemnify Minnesota franchisees against liability to third par... resulting from claims by third parties that the franchisee's use o... Franchisor's trademark infringes trademark rights of the third ... Franchisor does not indemnify against the consequences of a franch... use of the Franchisor's trademark except if used in accordance wit... requirements of the Franchise Agreement, and, as a condition... indemnification, the franchisee must provide notice to Franchisor o... such claim within ten (10) days and tender the defense of the claim... Franchisor.  If Franchisor accepts the tender of defense, Franchisor h... right to manage the defense of the claim, including the right to comprom... settle or otherwise resolve the claim, and to determine whether to appe... final determination of the claim."

(iv)    Liquidated damages and termination penalties are prohibited by... State of Minnesota and, therefore, Section 19 of the Franchise Agreement is amen... substitution of the following language for the original language describing Liquidated D...

"In the event that prior to the Expiration Date set forth in Paragrap... hereof, there is an "early termination" of this Agreement, (which ... purposes of this Paragraph shall mean any termination of this Agreemen... Franchisor "for cause", or any termination of this Agreement mad... Franchisee prior to the Expiration Date for any reason), Franchisee sha... continue and remain liable to Franchisor for any and all damages w... Franchisor has sustained or may sustain by reason of such default or d... and the breach of the Franchise Agreement on Franchisee's part until th... of the Term.

At the time of such Termination, Franchisee covenants to p... Franchisor within 10 days after demand compensation for all dam...

losses, costs and expenses (including reasonable attorney's fees) incu...
Franchisor and/or amounts which would otherwise be payable for and ...
the remainder of the unexpired Term of the Franchise Agreement ...
such Termination. This does not constitute a waiver of Franchisee's ...
a trial on any of the above matters."

**(v)**     The following language will be incorporated in any Franchi... issued in the State of Minnesota:

Minnesota Statutes, Section 80C.21 and Minn. Rule 2860.4400J prohi...
from requiring litigation to be conducted outside of Minnesota. Noth...
the Franchise Agreement can abrogate or reduce any of your righ...
provided for in the Minnesota Statutes 1987, Chapter 80C, or your rig...
any procedure, forum, jury trial or remedies provided for by the la...
Minnesota.

**(vi)**     Section 19C. of the Franchise Agreement is amended to read ...

"Franchisee acknowledges that if Franchisee breache...
Agreement and/or continues to utilize the CENTURY 21 Syst...
CENTURY 21 Marks at such times when Franchisee is not legally en...
to use them, Franchisor shall have no adequate remedy at law. There...
Franchisee expressly consents and agrees that Franchisor may, in addit...
any other available remedies, seek an injunction and/or temporary restr...
order to terminate or prevent the continuation of any existing defau...
violation, and to prevent the occurrence of any threatened defau...
violation, by Franchisee of this Agreement."

**(vii)**     All other rights, obligations, and provisions of the Franchise Agree...
remain in full force and effect. Only the Sections specifically added to or am...
Addendum shall be affected. This Addendum is incorporated in and made a part of th...
Agreement for the State of Minnesota.

**C.**     **Rhode Island Addendum:** For a Franchisee who is a resider...
Island, the following provisions shall apply and shall supersede any provision in th...
to the contrary:

Section 19-28.1-14 of the Rhode Island Franchise Investment Act provides that:

"A provision in a franchise agreement restricting jurisdiction...
venue to a forum outside this state or requiring the application of the law...
another state is void with respect to a claim otherwise enforceable unde...
Act."

This supersedes Section 25 or any other contrary provision of the Franchise Agreement.

**D.    South Dakota Addendum:** For a Franchisee who is a resident of South Dakota, the following provisions shall apply and shall supersede any provision in this Agreement to the contrary:

**(i)**    Liquidated damages and the termination penalties are prohibited by law in the State of South Dakota. Therefore to the extent that Section 19 of the Franchise Agreement is inconsistent with South Dakota law, the following language shall be substituted:

"In the event that prior to the Expiration Date set forth in Paragraph 2 hereof, there is an "early termination" of this Agreement, (which for purposes of this Paragraph shall mean any termination of this Agreement by Franchisor "for cause", or any termination of this Agreement made by Franchisee prior to the Expiration Date for any reason), Franchisee shall be, continue and remain liable to Franchisor for any and all damages which Franchisor has sustained or may sustain by reason of such default or defaults and the breach of the Franchise Agreement on Franchisee's part until the end of the Term.

At the time of such Termination, Franchisee covenants to pay to Franchisor within 10 days after demand compensation for all damages, losses, costs and expenses (including reasonable attorney's fees) incurred by Franchisor and/or amounts which would otherwise be payable for and during the remainder of the unexpired Term of the Franchise Agreement but for such Termination. This does not constitute a waiver of Franchisee's right to a trial on any of the above matters."

**(ii)**    Franchise registration, employment, covenants not to compete and other matters of local concern will be governed by the laws of the State of South Dakota. As to contractual and all other matters, the Franchise Agreement will be and remain subject to the construction, enforcement and interpretation of the laws of the State of New Jersey. Any provision in the Franchise Agreement which designates jurisdiction or venue, or requires the franchisee to agree to jurisdiction or venue, in a forum outside of South Dakota, is deleted from any Franchise Agreement issued in the State of South Dakota.

**(iii)**    No release language set forth in the Franchise Agreement (including, but not limited to Section 16A thereof) shall relieve the Franchisor or any other person, directly or indirectly, from liability imposed by the laws concerning franchising of the State of South Dakota.

**(iv)**    Termination provisions covering breach of the Franchise Agreement, failure to meet performance and quality standards, and failure to make royalty payments contained in the Franchise Agreement shall afford the Franchisee thirty (30) days written notice with an opportunity to cure the default before termination.

**(v)**    The following provision shall be added to the end of the Franchise Agreement:

> "Pursuant to SDCL 37-5A-86, any acknowledgment provision, disclaimer or integration clause or a provision having a similar effect in a franchise agreement does not negate or act to remove from judicial review any statement, misrepresentation or action that would violate this chapter or a rule or order under this chapter."

**(vi)    REGISTRATION OF THIS FRANCHISE DOES NOT CONSTITUTE APPROVAL OR RECOMMENDATION OF THE FRANCHISE BY THE DIRECTOR.**

To the extent this Addendum is inconsistent with any terms or conditions of the Franchise Agreement or exhibits or attachments thereto, the terms of this Addendum shall govern.

**E.**    **Washington Addendum:** For a Franchisee who is a resident of Washington, the following provisions shall apply and shall supersede any provision in this Agreement to the contrary:

**(i)**    The State of Washington has a statute, RCW 19.100.180, which may supersede the Franchise Agreement in the franchisee's relationship with the franchisor including the areas of termination and renewal of the franchise. There may also be court decisions which may supersede the Franchise Agreement in the franchisee's relationship with the franchisor including the areas of termination and renewal of the franchise.

**(ii)**    In any arbitration involving a franchise purchased in Washington, the arbitration site shall be either in the State of Washington, or in a place mutually agreed upon at the time of the arbitration, or as determined by the arbitrator.

**(iii)**    In the event of a conflict of laws, the provisions of the Washington Franchise Investment Protection Act, Chapter 19.100 RCW shall prevail.

**(iv)**    A release or waiver of rights executed by a franchisee shall not include rights under the Washington Franchise Investment Protection Act except when executed pursuant to a negotiated settlement after the agreement is in effect and where the parties are represented by independent counsel. Provisions such as those which unreasonably restrict or limit the statute of limitations period for claims under the Act, rights or remedies under the Act such as a right to jury trial may not be enforceable.

**(v)**    Transfer fees are collectable to the extent that they reflect the franchisor's reasonable estimated or actual costs in effecting a transfer.

**F.**    **Wisconsin Addendum:** For a Franchisee who is a resident of Wisconsin, the following provisions shall apply and shall supersede any provision in this Agreement to the contrary:

The following provisions shall supersede and apply to the Franchise Agreement:

      **(i)**    The Wisconsin Fair Dealership Act, Wisconsin Statutes, Chapter 135 (the "Act"), shall apply to and govern the provisions of the Franchise Agreement.

      **(ii)**    The Act's requirement, including that in certain circumstances a franchisee receive ninety (90) days' notice of termination, cancellation, non-renewal or substantial change in competitive circumstances, and sixty (60) days to remedy claimed deficiencies, shall supersede the provisions of Section 17 of the Franchise Agreement to the extent they may be inconsistent with the Act's requirements.

      IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on this _____ day of _____, 20_____.

FRANCHISEE: **Heritage Real Estate, Inc.**

By: _____
      **John W. Schlendorf Jr., President**

By: _____
      **Susanna Schlendorf, Secretary/Treasurer**

By: _____
      **Sereta Churchill, Vice President**

(If Franchisee is a corporation, this Agreement must be signed by each person owning shares of any class of stock. If Franchise is a limited liability company, this Agreement must be signed by each member owning any interest. If Franchisee is a partnership, this Agreement must be signed by each partner.)

      ACCEPTED ON THIS _13th_ DAY OF _June_, 20_01_. (ACCEPTANCE BY FRANCHISOR CAN ONLY BE MADE BY AN AUTHORIZED CORPORATE OFFICER.)

CENTURY 21 REAL ESTATE CORPORATION

By _____
**John G. Kornfeind**
**Senior Vice President, Franchise Sales and Administration**

# EXHIBIT E

## GUARANTY OF PAYMENT AND PERFORMANCE

This Guaranty of Payment and Performance is given by the undersigned, **John W. Schlendorf, Jr., Susanna Schlendorf, Sereta Churchill** (individually a "Guarantor" and collectively "Guarantors"), this _____ day of _____, 20_____ to Century 21 Real Estate Corporation ("CENTURY 21"), in order to induce CENTURY 21 to accept **Heritage Real Estate, Inc.** ("Franchisee") as a franchisee of CENTURY 21.

Each Guarantor does hereby, jointly and severally, to the extent herein provided, guaranty to CENTURY 21 the prompt payment and performance when due of all obligations of Franchisee under that certain Franchise Agreement bearing even date hereof, including any renewal, replacement or modification of said Franchise Agreement, and any other franchise agreement or other agreement now existing or hereafter entered into between Franchisee and CENTURY 21. This Guaranty shall apply to the initial franchise fee, all franchise royalty or service fees, NAF contributions, charges for manuals, supplies, materials, services and products furnished by CENTURY 21, audit fees, regional and local council assessments, assignment fees, attorneys fees, referral fees, obligations to indemnify and other such charges, fees and assessments provided for under the aforementioned Franchise Agreement.

This Guaranty shall be deemed continuing in nature. This Guaranty shall not be discharged by renewal of any claims guaranteed by this instrument, the suffering of any indulgence to any debt or extension of time of payment thereof. Presentment, demand, protest, notice of protest and dishonor, and diligence in collecting any obligation under said Franchise Agreement are each and all waived by Guarantors and/or acknowledged as inapplicable. CENTURY 21 shall not be required to pursue any remedy as to said obligations against Franchisee as a condition of the obligation hereunder of Guarantors.

It shall be a condition to the enforcement of this Guaranty that Guarantors shall be given five (5) days prior written notice, either hand-delivered or sent by mail to Guarantors at Franchisee's address or such other place designated in writing by Guarantors to CENTURY 21. Said notice shall state that non-payment or non-performance has occurred, that each Guarantor is liable for all obligations owing to CENTURY 21 on account of the referenced Franchise Agreement, and that demand is made upon said Guarantor for payment of said obligations. Failure to give such notice shall not discharge Guarantor but merely prevent enforcement until so given.

The obligation of each Guarantor hereunder is an absolute and unconditional obligation, and constitutes a guaranty of payment and performance.

Each Guarantor hereby expressly waives notice of the acceptance of this Guaranty and agrees that no action or failure to act by CENTURY 21, including, but not limited to, CENTURY 21's granting of additional time to pay, shall in any way limit or discharge Guarantor's liability hereunder. Notwithstanding anything herein to the contrary, this Guaranty shall not be applicable to and each Guarantor shall not be liable or responsible for these certain amounts which might otherwise be payable to CENTURY 21 as a result of termination of the Franchise Agreement prior to its expiration date if all of the following conditions are satisfied:

C21E03C 3/00                                                                                          E0381

1. The Franchise Agreement is terminated pursuant to a mutual termination agreement arising out of either a) the illness of the Franchisee's majority stockholder(s), or b) the retirement of the Franchisee's majority stockholder(s);

2. The majority stockholder(s) does not act as a real estate broker or associate broker, either directly or indirectly, within twenty (20) miles of Franchisee's Approved Location (as defined in the Franchise Agreement) during the time period which is equal to the remaining term of the Franchise Agreement at the time of the mutual termination (the "Remaining Time Period"); and

3. The Franchisee has paid all royalty or service fees, NAF contributions, Broker Council fees, and any other charges and fees which were due and owing or otherwise accrued prior to the effective date of termination.

In the event of a mutual termination as above provided, Guarantors will not be responsible to CENTURY 21 or to Franchisee's Broker Council for any lost future profits. All other amounts payable by Guarantors under this Guaranty shall remain due and payable.

Notwithstanding the provisions above, if after the execution of a mutual termination agreement based on the illness or retirement of Franchisee's majority stockholder(s), said majority stockholder(s) nonetheless acts, directly or indirectly, as a real estate broker or associate broker, within twenty (20) miles of Franchise's Approved Location (as defined in the Franchise Agreement) at any time during the Remaining Time Period, Guarantors shall remain responsible to CENTURY 21 for all losses suffered by CENTURY 21 during the Remaining Time Period including those otherwise excluded above.

Individually and Personally:

By _____
     **John W. Schlendorf, Jr.**

Individually and Personally:

By _____
     **Susanna Schlendorf**

Individually and Personally:

By _____
     **Sereta Churchill**

# EXHIBIT F

## GUARANTY OF PAYMENT AND PERFORMANCE

This Guaranty of Payment and Performance is given by the undersigned, **John W. Schlendorf, Jr., Susanna Schlendorf, Sereta Churchill** (individually a "Guarantor" and collectively "Guarantors"), this _____ day of _____, 20_____ to Century 21 Real Estate Corporation ("CENTURY 21"), in order to induce CENTURY 21 to accept **Heritage Real Estate, Inc.** ("Franchisee") as a franchisee of CENTURY 21.

Each Guarantor does hereby, jointly and severally, to the extent herein provided, guaranty to CENTURY 21 the prompt payment and performance when due of all obligations of Franchisee under that certain Franchise Agreement bearing even date hereof, including any renewal, replacement or modification of said Franchise Agreement, and any other franchise agreement or other agreement now existing or hereafter entered into between Franchisee and CENTURY 21. This Guaranty shall apply to the initial franchise fee, all franchise royalty or service fees, NAF contributions, charges for manuals, supplies, materials, services and products furnished by CENTURY 21, audit fees, regional and local council assessments, assignment fees, attorneys fees, referral fees, obligations to indemnify and other such charges, fees and assessments provided for under the aforementioned Franchise Agreement.

This Guaranty shall be deemed continuing in nature. This Guaranty shall not be discharged by renewal of any claims guaranteed by this instrument, the suffering of any indulgence to any debt or extension of time of payment thereof. Presentment, demand, protest, notice of protest and dishonor, and diligence in collecting any obligation under said Franchise Agreement are each and all waived by Guarantors and/or acknowledged as inapplicable. CENTURY 21 shall not be required to pursue any remedy as to said obligations against Franchisee as a condition of the obligation hereunder of Guarantors.

It shall be a condition to the enforcement of this Guaranty that Guarantors shall be given five (5) days prior written notice, either hand-delivered or sent by mail to Guarantors at Franchisee's address or such other place designated in writing by Guarantors to CENTURY 21. Said notice shall state that non-payment or non-performance has occurred, that each Guarantor is liable for all obligations owing to CENTURY 21 on account of the referenced Franchise Agreement, and that demand is made upon said Guarantor for payment of said obligations. Failure to give such notice shall not discharge Guarantor but merely prevent enforcement until so given.

The obligation of each Guarantor hereunder is an absolute and unconditional obligation, and constitutes a guaranty of payment and performance.

Each Guarantor hereby expressly waives notice of the acceptance of this Guaranty and agrees that no action or failure to act by CENTURY 21, including, but not limited to, CENTURY 21's granting of additional time to pay, shall in any way limit or discharge Guarantor's liability hereunder. Notwithstanding anything herein to the contrary, this Guaranty shall not be applicable to and each Guarantor shall not be liable or responsible for these certain amounts which might otherwise be payable to CENTURY 21 as a result of termination of the Franchise Agreement prior to its expiration date if all of the following conditions are satisfied:

1.  The Franchise Agreement is terminated pursuant to a mutual termination agreement arising out of either a) the illness of the Franchisee's majority stockholder(s), or b) the retirement of the Franchisee's majority stockholder(s);

2.  The majority stockholder(s) does not act as a real estate broker or associate broker, either directly or indirectly, within twenty (20) miles of Franchisee's Approved Location (as defined in the Franchise Agreement) during the time period which is equal to the remaining term of the Franchise Agreement at the time of the mutual termination (the "Remaining Time Period"); and

3.  The Franchisee has paid all royalty or service fees, NAF contributions, Broker Council fees, and any other charges and fees which were due and owing or otherwise accrued prior to the effective date of termination.

In the event of a mutual termination as above provided, Guarantors will not be responsible to CENTURY 21 or to Franchisee's Broker Council for any lost future profits. All other amounts payable by Guarantors under this Guaranty shall remain due and payable.

Notwithstanding the provisions above, if after the execution of a mutual termination agreement based on the illness or retirement of Franchisee's majority stockholder(s), said majority stockholder(s) nonetheless acts, directly or indirectly, as a real estate broker or associate broker, within twenty (20) miles of Franchisee's Approved Location (as defined in the Franchise Agreement) at any time during the Remaining Time Period, Guarantors shall remain responsible to CENTURY 21 for all losses suffered by CENTURY 21 during the Remaining Time Period including those otherwise excluded above.

Individually and Personally:

By _____
    John W. Schlendorf, Jr.

Individually and Personally:

By _____
    Susanna Schlendorf

Individually and Personally:

By _____
    Sereta Churchill

C21EX3C3-05

83381

43

# EXHIBIT G

## GUARANTY OF PAYMENT AND PERFORMANCE

This Guaranty of Payment and Performance is given by the undersigned, **John W. Schlendorf, Jr., Susanna Schlendorf and Sereta Churchill** (individually a "Guarantor" and collectively "Guarantors"), this _____ day of _____, 20**01** to Century 21 Real Estate Corporation ("CENTURY 21"), in order to induce CENTURY 21 to accept **Heritage Real Estate, Inc.** ("Franchisee") as a franchisee of CENTURY 21.

Each Guarantor does hereby, jointly and severally, to the extent herein provided, guaranty to CENTURY 21 the prompt payment and performance when due of all obligations of Franchisee under that certain Franchise Agreement bearing even date hereof, including any renewal, replacement or modification of said Franchise Agreement, and any other franchise agreement or other agreement now existing or hereafter entered into between Franchisee and CENTURY 21. This Guaranty shall apply to the initial franchise fee, all franchise royalty or service fees, NAF contributions, charges for manuals, supplies, materials, services and products furnished by CENTURY 21, audit fees, regional and local council assessments, assignment fees, attorneys fees, referral fees, obligations to indemnify and other such charges, fees and assessments provided for under the aforementioned Franchise Agreement.

This Guaranty shall be deemed continuing in nature. This Guaranty shall not be discharged by renewal of any claims guaranteed by this instrument, the suffering of any indulgence to any debt or extension of time of payment thereof. Presentment, demand, protest, notice of protest and dishonor, and diligence in collecting any obligation under said Franchise Agreement are each and all waived by Guarantors and/or acknowledged as inapplicable. CENTURY 21 shall not be required to pursue any remedy as to said obligations against Franchisee as a condition of the obligation hereunder of Guarantors.

In addition, Guarantors hereby waive, to the fullest extent permitted by law, diligence, demand, notice of demand, presentment for payment, notice of non-payment, notice of dishonor, protest and notice of protest and specifically consent to and waive notice of any renewals, extensions, amendments or modifications to the Development Advance Note, Expansion Promissory Note and Second Expansion Promissory Note dated March 29, 2001 executed in connection with the franchise agreement whether made to or in favor of Guarantors or any other person or persons. Guarantors agree that the Holder under such Development Advance Note, Expansion Promissory Note and Second Expansion Promissory Note shall have the right to modify the terms of the notes, grant extensions, notations, renewals, releases, discharges, compositions and compromises with any party liable under the notes (which parties shall include Guarantors) with or without any notice to, or consent of, and without discharging or affecting the obligations of, any other party liable under the notes, including Guarantors. Guarantors further agree that Holder under such Development Advance Note, Expansion Promissory Note and Second Expansion Promissory Note may pursue any and all available remedies, whether at law or in equity, against Guarantors directly with regard to all obligations and liabilities of Heritage Real Estate, Inc. under said notes, as if all Guarantors had executed such notes as Co-Makers. The claiming of any statutes of limitations as a defense to any demand with regard to the notes against Guarantors, collectively or individually, is expressly waived by each and all of said parties, including Guarantors.

It shall be a condition to the enforcement of this Guaranty that Guarantors shall be given five (5) days prior written notice, either hand-delivered or sent by mail to Guarantors at Franchisee's address or such other place designated in writing by Guarantors to CENTURY 21. Said notice shall state that non-payment or non-performance has occurred, that each Guarantor is liable for all obligations owing to CENTURY 21 on account of the referenced Franchise Agreement, and that demand is made upon said Guarantor for payment of said obligations. Failure to give such notice shall not discharge Guarantor but merely prevent enforcement until so given.

The obligation of each Guarantor hereunder is an absolute and unconditional obligation, and constitutes a guaranty of payment and performance.

Each Guarantor hereby expressly waives notice of the acceptance of this Guaranty and agrees that no action or failure to act by CENTURY 21, including, but not limited to, CENTURY 21's granting of additional time to pay, shall in any way limit or discharge Guarantor's liability hereunder.

Notwithstanding anything herein to the contrary, this Guaranty shall not be applicable to and each Guarantor shall not be liable or responsible for these certain amounts which might otherwise be payable to CENTURY 21 as a result of termination of the Franchise Agreement prior to its expiration date if all of the following conditions are satisfied:

1. The Franchise Agreement is terminated pursuant to a mutual termination agreement arising out of either a) the illness of the Franchisee's majority stockholder(s), or b) the retirement of the Franchisee's majority stockholder(s);

2. The majority stockholder(s) does not act as a real estate broker or associate broker, either directly or indirectly, within twenty (20) miles of Franchisee's Approved Location (as defined in the Franchise Agreement) during the time period which is equal to the remaining term of the Franchise Agreement at the time of the mutual termination (the "Remaining Time Period"); and

3. The Franchisee has paid all royalty or service fees, NAF contributions, Broker Council fees, and any other charges and fees which were due and owing or otherwise accrued prior to the effective date of termination.

In the event of a mutual termination as above provided, Guarantors will not be responsible to CENTURY 21 or to Franchisee's Broker Council for any lost future profits. All other amounts payable by Guarantors under this Guaranty shall remain due and payable.

Notwithstanding the provisions above, if after the execution of a mutual termination agreement based on the illness or retirement of Franchisee's majority stockholder(s), said majority stockholder(s) nonetheless acts, directly or indirectly, as a real estate broker or associate broker, within twenty (20) miles of Franchisee's Approved Location (as defined in the Franchise Agreement) at any time during the Remaining Time Period, Guarantors shall remain responsible to CENTURY 21 for all losses suffered by CENTURY 21 during the Remaining Time Period including those otherwise excluded above.

Individually and Personally:

By _____
        John W. Schlendorf, Jr.

Individually and Personally:

By _____
        Susanna Schlendorf

Individually and Personally:

By _____
        Sereta Churchill

# EXHIBIT H

## GUARANTY OF PAYMENT AND PERFORMANCE

This Guaranty of Payment and Performance is given by the undersigned, **John W. Schlendorf, Jr., Susanna Schlendorf and Sereta Churchill** (individually a "Guarantor" and collectively "Guarantors"), this _____ day of _____, 20**01** to Century 21 Real Estate Corporation ("CENTURY 21"), in order to induce CENTURY 21 to accept **Heritage Real Estate, Inc.** ("Franchisee") as a franchisee of CENTURY 21.

Each Guarantor does hereby, jointly and severally, to the extent herein provided, guaranty to CENTURY 21 the prompt payment and performance when due of all obligations of Franchisee under that certain Franchise Agreement bearing even date hereof, including any renewal, replacement or modification of said Franchise Agreement, and any other franchise agreement or other agreement now existing or hereafter entered into between Franchisee and CENTURY 21. (including, but not limited to, the Development Advance Promissory Note to be executed (in connection with the Franchise Agreement) on or about May 31, 2001 in the Principal amount of $85,000 (the "Development Advance Note") and the Expansion Promissory Note to be executed (in connection with the Franchise Agreement) on or about May 31, 2001 in the Principal amount of $20,000 (the "Expansion Note")(together with the Development Advance Note, the "Notes")). This Guaranty shall apply to the initial franchise fee, all franchise royalty or service fees, NAF contributions, Note payments, charges for manuals, supplies, materials, services and products furnished by CENTURY 21, audit fees, regional and local council assessments, assignment fees, attorneys fees, referral fees, obligations to indemnify and other such charges, fees and assessments provided for under the aforementioned Franchise Agreement.

This Guaranty shall be deemed continuing in nature. This Guaranty shall not be discharged by renewal of any claims guaranteed by this instrument, the suffering of any indulgence to any debt or extension of time of payment thereof. Presentment, demand, protest, notice of protest and dishonor, and diligence in collecting any obligation under said Franchise Agreement are each and all waived by Guarantors and/or acknowledged as inapplicable. CENTURY 21 shall not be required to pursue any remedy as to said obligations against Franchisee as a condition of the obligation hereunder of Guarantors.

In addition, Guarantors hereby waive, to the fullest extent permitted by law, diligence, demand, notice of demand, presentment for payment, notice of non-payment, notice of dishonor, protest and notice of protest and specifically consent to and waive notice of any renewals, extensions, amendments or modifications to the Notes executed in connection with the franchise agreement whether made to or in favor of Guarantors or any other person or persons. Guarantors agree that the Holder under such Notes shall have the right to modify the terms of the note, grant extensions, notations, renewals, releases, discharges, compositions and compromises with any party liable under the Notes (which parties shall include Guarantors) with or without any notice to, or consent of, and without discharging or affecting the obligations of, any other party liable under the Notes, including Guarantors. Guarantors further agree that Holder under such Notes may pursue any and all available remedies, whether at law or in equity, against Guarantors directly with regard to all obligations and liabilities of Heritage Real Estate, Inc. under said Notes, as if all Guarantors

48

had executed such Notes as Co-Makers. The claiming of any statutes of limitations as a defense to any demand with regard to the notes against Guarantors, collectively or individually, is expressly waived by each and all of said parties, including Guarantors.

It shall be a condition to the enforcement of this Guaranty that Guarantors shall be given five (5) days prior written notice, either hand-delivered or sent by mail to Guarantors at Franchisee's address or such other place designated in writing by Guarantors to CENTURY 21. Said notice shall state that non-payment or non-performance has occurred, that each Guarantor is liable for all obligations owing to CENTURY 21 on account of the referenced Franchise Agreement, and that demand is made upon said Guarantor for payment of said obligations. Failure to give such notice shall not discharge Guarantor but merely prevent enforcement until so given.

The obligation of each Guarantor hereunder is an absolute and unconditional obligation, and constitutes a guaranty of payment and performance.

Each Guarantor hereby expressly waives notice of the acceptance of this Guaranty and agrees that no action or failure to act by CENTURY 21, including, but not limited to, CENTURY 21's granting of additional time to pay, shall in any way limit or discharge Guarantor's liability hereunder.

Notwithstanding anything herein to the contrary, this Guaranty shall not be applicable to and each Guarantor shall not be liable or responsible for these certain amounts which might otherwise be payable to CENTURY 21 as a result of termination of the Franchise Agreement prior to its expiration date if all of the following conditions are satisfied:

1.  The Franchise Agreement is terminated pursuant to a mutual termination agreement arising out of either a) the illness of the Franchisee's majority stockholder(s), or b) the retirement of the Franchisee's majority stockholder(s);

2.  The majority stockholder(s) does not act as a real estate broker or associate broker, either directly or indirectly, within twenty (20) miles of Franchisee's Approved Location (as defined in the Franchise Agreement) during the time period which is equal to the remaining term of the Franchise Agreement at the time of the mutual termination (the "Remaining Time Period"); and

3.  The Franchisee has paid all royalty or service fees, NAF contributions, Broker Council fees, and any other charges and fees which were due and owing or otherwise accrued prior to the effective date of termination.

In the event of a mutual termination as above provided, Guarantors will not be responsible to CENTURY 21 or to Franchisee's Broker Council for any lost future profits. All other amounts payable by Guarantors under this Guaranty shall remain due and payable.

Notwithstanding the provisions above, if after the execution of a mutual termination agreement based on the illness or retirement of Franchisee's majority stockholder(s), said

majority stockholder(s) nonetheless acts, directly or indirectly, as a real estate broker or associate broker, within twenty (20) miles of Franchise's Approved Location (as defined in the Franchise Agreement) at any time during the Remaining Time Period, Guarantors shall remain responsible to CENTURY 21 for all losses suffered by CENTURY 21 during the Remaining Time Period including those otherwise excluded above.

Individually and Personally:

By _____
      John W. Schlendorf, Jr.

Individually and Personally:

By _____
      Susanna Schlendorf

Individually and Personally:

By _____
      Sereta Churchill

50

# EXHIBIT I

COPY

Office No.

## DEVELOPMENT ADVANCE PROMISSORY NOTE

**$402,500**                                    Parsippany, New Jersey
                                                Dated: **September , 2000**

　　　FOR GOOD AND VALUABLE CONSIDERATION, the undersigned **Heritage Real Estate, Inc., a California Corporation** ("Maker") promises to pay to CENTURY 21 REAL ESTATE CORPORATION or its successors or assigns ("Holder"), or order, on the date eight years from the first Determination Date (as defined below), at 6 Sylvan Way, Parsippany, New Jersey, or at such other place as Holder may from time to time designate, in writing, the principal sum of **Four Hundred Two Thousand Five Hundred Dollars and 00/100 ($402,500)**(the "Principal") which amount shall, except as set forth below, bear no interest.

　　If (a) Maker is not in default (a default being present only after notice and the expiration of any "cure" period and in the absence of an event of force majeure) with respect to its obligations under any franchise agreements with Holder, as each may be amended (the "Franchise Agreements") (including payment of royalty fees, service fees and NAF contributions thereunder) and (b) the real estate brokerage office locations operated by Maker as a CENTURY 21 Firm have Gross Revenues (as such term is defined in the Franchise Agreement) on which royalties are payable under the Franchise Agreements, over the first full calendar year (i.e. Calendar Year 2001) beginning on or after the Commencement (as defined in the Franchise Agreement in conjunction with which this Note was executed in connection with) of at least six million dollars ($6,000,000), and over each full calendar year thereafter (each such calendar year ending on a "Determination Date") has Gross Revenues (as defined above) which average (calculated by adding the Gross Revenues for the current and all prior full calendar years and dividing said sum by the number of such calendar years) at least six million dollars ($6,000,000) per year, then on each such Determination Date, one-ninth of the Principal (the "Yearly Principal") shall be forgiven. On each such Determination Date, to the extent no Principal has been forgiven on such date, an amount of Principal equal to the Yearly Principal shall become due and payable within thirty (30) days of the demand therefor. The last Determination Date shall be the date eight years from the first Determination Date. In the event Maker fails to make any payment when due, including any payment due upon acceleration of this Note, the entire outstanding Principal shall thereafter bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or the highest rate allowed by law from its due date until paid in full.

　　Notwithstanding the foregoing installment payments, Maker acknowledges and agrees that Holder, at its sole option and discretion, without notice, may apply to the outstanding due and payable Principal and accrued and unpaid interest amount evidenced by this Note any and all payments due to Maker from Holder under the CENTURY 21 Incentive Bonus set forth in any Franchise Agreement, if or when any such CENTURY 21 Incentive Bonus becomes due or payable to Maker. If and to the extent necessary, Maker hereby assigns, transfers and conveys to Holder all of Maker's rights, title and interest in and to the CENTURY 21 Incentive Bonus. Amounts of CENTURY 21 Incentive Bonuses applied against the Principal and interest shall correspondingly reduce amounts owed by Maker hereunder.

　　All payments shall be made in lawful money of the United States of America without

set-off, offset, recoupment, deduction or counterclaim of any kind whatsoever. Payments, when made, shall first be applied to accrued and unpaid interest, if any, and then to Principal.

Maker may prepay this Note in whole or in part on any date without premium or penalty. No partial prepayment shall extend or postpone the due date of any subsequent installment payment or change the amount of the installment payment. Prepayments will be applied without notation on this Note.

Holder of this Note may determine that Maker is in default and may accelerate the unpaid Principal and all interest accrued thereon to become immediately due and payable, without presentment for payment or any notice or demand, (A) if Maker, endorser, surety or guarantor of this Note (i) voluntarily suspends business; (ii) becomes insolvent or offers settlement to any creditors; (iii) files a petition in bankruptcy or is the subject of an involuntary petition in bankruptcy which is not dismissed within ninety (90) days after its filing; (iv) institutes any proceeding under any bankruptcy or insolvency laws relating to the relief of Maker from its debtors; (v) makes an assignment for the benefit of creditors; or (vi) makes any material false statement or representation orally or in writing, fails to furnish contractually required information, or fails to permit contractually required inspection of any books or records on demand of Holder, (B) upon default in payment of any Principal payment due hereunder, (C) upon default, in Holder's reasonable opinion, of any other agreement or note between Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements, or (D) upon early termination of any agreement between Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements and/or upon expiration of any Franchise Agreements. For the purposes of this Note, a party shall be in default of an agreement if no event of force majeure is present and if such party shall have been given notice of such default in accordance with the terms of any such agreement, and, as to those defaults for which such party is afforded an opportunity to cure pursuant to such agreement, such party shall have failed to make such cure within the applicable period provided. Maker's obligation to pay the Principal and interest thereon, if accelerated, shall be absolute and unconditional, and shall not be subject to any rights of set-off, offset or recoupment.

Maker agrees to pay all expenditures made in any attempt to collect any amounts due pursuant to this Note. If any legal action is necessary to enforce or collect this Note, the prevailing party shall be entitled to reasonable attorney's fees (including in-house attorneys) and court costs and all costs of collection in addition to any other relief to which that party may be entitled.

Maker and all endorsers or guarantors of this Note, and each of them, hereby waive, to the fullest extent permitted by law, diligence, demand, notice of demand, presentment for payment, notice of non-payment, notice of dishonor, protest and notice of protest and specifically consent to and waive notice of any renewals, extensions, amendments or modifications of this Note, whether made to or in favor of Maker or any other person or persons. Holder reserves the right to modify the terms of this Note, grant extensions, notations, renewals, releases, discharges, compositions and compromises with any party liable under this Note, with or without any notice to or the consent of, and without discharging or affecting the obligations of, any other party liable under this Note. The claiming of any statute of limitations as a defense to any demand against Maker or any endorser or guarantor is expressly waived by each and all of said parties.

If this Note is being executed in connection with the acquisition or consolidation (by merger, acquisition or otherwise) of a real estate brokerage business from another person or entity, Maker

acknowledges and agrees that while Holder and its representatives may have participated in the negotiation of the terms and conditions of, or in other aspects of, such acquisition and assisted with the preparation of documents (legal or otherwise) which memorialize the terms and conditions of such acquisition, Holder and its representatives were acting solely in the capacity of franchisor of its franchise system and were not retained by Maker in the capacity of agent, consultant or advisor. Maker acknowledges and agrees that it has not and will not rely upon any financial advisory services, investment banking services, or any legal or accounting advice relating to the acquisition that have been provided by Holder or any of its employees, representatives, or affiliates and that neither Holder nor any of its affiliates has shall have any liability in connection therewith. Maker acknowledges and agrees that it has completed any due diligence and other investigations of the acquired office as Maker deemed appropriate. Additionally, Maker acknowledges and agrees that it has not relied on any representations made by Holder or any of its affiliates and its representatives in deciding to complete the acquisition and related transactions. Maker waives any and all claims against Holder and its officers, directors, shareholders, affiliates, employees and agents arising out of the acquisition or consolidation. In addition, Maker acknowledges and agrees that neither Holder nor any of its affiliates has made any representations or warranties, nor furnished any information to them concerning any aspect of the Franchise Agreements or Maker's business.

This Note shall be construed and enforced in accordance with the laws of the State of New Jersey. The terms of this Note are confidential and will not be disclosed to any third party by Maker without the prior written consent of Holder, except to Maker's tax advisors and commercial lenders or unless otherwise required by law.

This Note shall be the joint and several obligation of Maker, all guarantors and endorsers, if any, and shall be binding upon them and their heirs, executors, personal representatives, successors and assigns and shall inure to the benefit of Holder and its successors and assigns. This Note shall not be assignable by Maker without the prior written consent of Holder.

IN WITNESS WHEREOF, the undersigned Maker has executed this Note as of the date first set forth above.

ATTEST:

_____
(Assistant) Secretary

MAKER: Heritage Real Estate, Inc.

By: _____
Name: John Schlendorf, Jr.
Title: President

By: _____
Name: Susanna Schlendorf
Title: Secretary

**EXHIBIT J**

Office No.**300178**

COPY

## DEVELOPMENT ADVANCE PROMISSORY NOTE

**$20,000**

Parsippany, New Jersey
Dated: **February 8, 2002**

FOR GOOD AND VALUABLE CONSIDERATION, the undersigned **Heritage Real Estate, Inc., a California corporation** ("Maker") and **Sereta Churchill, Thomas H. Churchill, John W. Schlendorf, Jr., and Susanna Schlendorf** ("Co-Maker(s)") promise to pay to Century 21 Real Estate Corporation or its successors or assigns ("Holder"), or order, on the date ten years from December 31, 2002 (as defined below), at 1 Campus Drive, Parsippany, New Jersey, or at such other place as Holder may from time to time designate, in writing, the principal sum of **Twenty Thousand and 00/100 Dollars ($20,000.00)** (the "Principal") which amount shall, except as set forth below, bear no interest.

If (a) Maker is not in default with respect to its obligations under any franchise agreements with Holder, as each may be amended (the "Franchise Agreements") (including payment of royalty fees, service fees and NAF contributions thereunder) and (b) the real estate brokerage offices operated by Maker have aggregate Gross Revenues (as such term is defined in the Franchise Agreement governing each such office) on which royalties are payable under each such Franchise Agreement over the first full calendar year beginning on January 1, 2002 or after the Commencement (as defined in the Franchise Agreement which this Note was executed in connection with), and over each full calendar year thereafter (each such calendar year ending on a "Determination Date") of at least **$8.7 million**, then on each such Determination Date, with the first Determination Date of December 31, 2002, one-eleventh of the Principal (the "Yearly Principal") shall be forgiven. On each such Determination Date, to the extent no Principal has been forgiven on such date, an amount of Principal equal to the Yearly Principal shall become due and payable. The last Determination Date shall be December 31, 2012. In the event Maker or Co-Maker(s) fail to make any payment when due, including any payment due upon acceleration of this Note, the entire outstanding Principal shall thereafter bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or the highest rate allowed by law from its due date until paid in full.

Notwithstanding the foregoing installment payments, Maker acknowledges and agrees that Holder, at its sole option and discretion, without notice, may apply to the outstanding due and payable Principal and accrued and unpaid interest amount evidenced by this Note any and all payments due to Maker from Holder under the CENTURY 21 Incentive Bonus set forth in any Franchise Agreement, if or when any such CENTURY 21 Incentive Bonus becomes due or payable to Maker. If and to the extent necessary, Maker hereby assigns, transfers and conveys to Holder all of Maker's rights, title and interest in and to the CENTURY 21 Incentive Bonus. Amounts of CENTURY 21 Incentive Bonuses applied against the Principal shall correspondingly reduce amounts owed by Maker hereunder.

All payments shall be made in lawful money of the United States of America without set-off, offset, recoupment, deduction or counterclaim of any kind whatsoever. Payments, when made, shall first be applied to accrued and unpaid interest, if any, and then to Principal.

Maker and Co-Maker(s) may prepay this Note in whole or in part on any date without

C21EXHD2 12/99

-1-

72284

premium or penalty. No partial prepayment shall extend or postpone the due date of any subsequent installment payment or change the amount of the installment payment. Prepayments will be applied without notation on this Note.

Holder of this Note may determine that Maker and Co-Maker(s) are in default and may accelerate the unpaid Principal and all interest accrued thereon to become immediately due and payable, without presentment for payment or any notice or demand, (A) if Maker, Co-Maker(s), endorser, surety or guarantor of this Note (i) suspends business; (ii) becomes insolvent or offers settlement to any creditors; (iii) files a petition in bankruptcy, either voluntary or involuntary; (iv) institutes any proceeding under any bankruptcy or insolvency laws relating to the relief of debtors; (v) makes an assignment for the benefit of creditors; or (vi) makes any false statement or representation orally or in writing, fails to furnish information, or fails to permit inspection of any books or records on demand of Holder, (B) upon default in payment of any Principal payment due hereunder, (C) upon default, in Holder's sole opinion, of any other agreement or note between Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements, or (D) upon termination or expiration of any agreement between Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements. For the purposes of this Note, a party shall be in default of an agreement if such party shall have been given notice of such default in accordance with the terms of any such agreement, and, as to those defaults for which such party is afforded an opportunity to cure pursuant to such agreement, such party shall have failed to make such cure within the applicable period provided. Maker's and Co-Maker(s)'s obligation to pay the Principal and interest thereon, if accelerated, shall be absolute and unconditional, and shall not be subject to any rights of set-off, offset or recoupment.

Maker and Co-Maker(s) agree to pay all expenditures made in any attempt to collect any amounts due pursuant to this Note. If any legal action is necessary to enforce or collect this Note, the prevailing party shall be entitled to reasonable attorney's fees (including in-house attorneys) and court costs and all costs of collection in addition to any other relief to which that party may be entitled.

Maker, Co-Maker(s) and all endorsers or guarantors of this Note, and each of them, hereby waive, to the fullest extent permitted by law, diligence, demand, notice of demand, presentment for payment, notice of non-payment, notice of dishonor, protest and notice of protest and specifically consent to and waive notice of any renewals, extensions, amendments or modifications of this Note, whether made to or in favor of Maker or any other person or persons. Holder reserves the right to modify the terms of this Note, grant extensions, notations, renewals, releases, discharges, compositions and compromises with any party liable under this Note, with or without any notice to or the consent of, and without discharging or affecting the obligations of, any other party liable under this Note. The claiming of any statute of limitations as a defense to any demand against Maker, Co-Maker(s) or any endorser or guarantor is expressly waived by each and all of said parties.

If this Note is being executed in connection with the acquisition or consolidation (by merger, acquisition or otherwise) of a real estate brokerage business from another person or entity, each of the Maker and Co-Makers acknowledges and agrees that while Holder and its representatives may have participated in the negotiation of the terms and conditions of, or in other aspects of, such acquisition and assisted with the preparation of documents (legal or otherwise) which memorialize the terms and conditions of such acquisition, Holder and its representatives were acting solely in the capacity of franchisor of its franchise system and were not retained by

C1IEXHD2 12/99

72284

Maker or any Co-Maker in the capacity of agent, consultant or advisor. Maker and each Co-Maker acknowledges and agrees that it and they have not and will not rely upon any financial advisory services, investment banking services, or any legal or accounting advice relating to the acquisition that have been provided by Holder or any of its employees, representatives, or affiliates and that neither Holder nor any of its affiliates has shall have any liability in connection therewith. Maker acknowledges and agrees that it has completed any due diligence and other investigations of the acquired office as Maker deemed appropriate. Additionally, Maker acknowledges and agrees that it has not relied on any representations made by Holder or any of its affiliates and its representatives in deciding to complete the acquisition and related transactions. Maker waives any and all claims against Holder and its officers, directors, shareholders, affiliates, employees and agents arising out of the acquisition or consolidation. In addition, each of Maker and Co-Makers acknowledges and agrees that neither Holder nor any of its affiliates has made any representations or warranties, nor furnished any information to them concerning any aspect of the Franchise Agreements or Maker's business.

This Note shall be construed and enforced in accordance with the laws of the State of New Jersey. The terms of this Note are confidential and will not be disclosed to any third party by Maker without the prior written consent of Holder, unless otherwise required by law.

This Note shall be the joint and several obligation of Maker, Co-Maker(s), all guarantors and endorsers, if any, and shall be binding upon them and their heirs, executors, personal representatives, successors and assigns and shall inure to the benefit of Holder and its successors and assigns. This Note shall not be assignable by Maker or any Co-Maker without the prior written consent of Holder.

IN WITNESS WHEREOF, the undersigned Maker and Co-Maker(s) have executed this Note as of the date first set forth above.

ATTEST:

_____
(Assistant) Secretary

_____
(Assistant) Secretary

_____
(Assistant) Secretary

MAKER: **Heritage Real Estate, Inc.**

By: _____
Name: **Sereta Churchill**
Title:

By: _____
Name: **Susanna Schlendorf**
Title:

By: _____
Name: **John W. Schlendorf, Jr.**
Title:

WITNESS:

_K 1 Bn_

WITNESS:

_H 1 Bn_

WITNESS:

_K l Bl_

WITNESS:

_K 1 Bn_

CO-MAKER(S):

_Sereta Churchill_

Sereta Churchill, individually

CO-MAKER(S):

_Susanna Schlendorf_

Susanna Schlendorf, individually

CO-MAKER(S):

_John W Schlendorf_

John W. Schlendorf, Jr., individually

CO-MAKER(S):

_Thomas H Churchill_

Thomas H. Churchill, individually

C21EXHD2  12/99

-4-

72284

# EXHIBIT K

*entered into Crest*
*11-26-02 (TP)*

# COPY

Office No.**300178**

## DEVELOPMENT ADVANCE PROMISSORY NOTE

**$24,500**

Parsippany, New Jersey
Dated: **October 25, 2002**

FOR GOOD AND VALUABLE CONSIDERATION, the undersigned ~~Heritage Real Estate, Inc., a California corporation~~ ("Maker") and ~~Sereta Churchill, Thomas H. Churchill, John W. Schlendorf, Jr., and Susanna Schlendorf~~ ("Co-Maker(s)") promise to pay to Century 21 Real Estate Corporation or its successors or assigns ("Holder"), or order, on the date nine years from December 31, 2003 (as defined below), at 1 Campus Drive, Parsippany, New Jersey, or at such other place as Holder may from time to time designate, in writing, the principal sum of ~~Twenty Four Thousand Five Hundred and 00/100 Dollars~~ (**$24,500.00**) (the "Principal") which amount shall, except as set forth below, bear no interest.

If (a) Maker is not in default with respect to its obligations under any franchise agreements with Holder, as each may be amended (the "Franchise Agreements") (including payment of royalty fees, service fees and NAF contributions thereunder) and (b) the real estate brokerage offices operated by Maker have aggregate Gross Revenues (as such term is defined in the Franchise Agreement governing each such office) on which royalties are payable under each such Franchise Agreement, over the first full calendar year beginning on January 1, 2003 and over each full calendar year thereafter (each such calendar year ending on a "Determination Date") of at least **$9,500,000**, then on each such Determination Date, one-tenth of the Principal (the "Yearly Principal") shall be forgiven. On each such Determination Date, to the extent no Principal has been forgiven on such date, an amount of Principal equal to the Yearly Principal shall become due and payable. The last Determination Date shall be December 31, 2012. In the event Maker or Co-Maker(s) fail to make any payment when due, including any payment due upon acceleration of this Note, the entire outstanding Principal shall thereafter bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or the highest rate allowed by law from its due date until paid in full.

Notwithstanding the foregoing installment payments, Maker acknowledges and agrees that Holder, at its sole option and discretion, without notice, may apply to the outstanding due and payable Principal and accrued and unpaid interest amount evidenced by this Note any and all payments due to Maker from Holder under the CENTURY 21 Incentive Bonus set forth in any Franchise Agreement, if or when any such CENTURY 21 Incentive Bonus becomes due or payable to Maker. If and to the extent necessary, Maker hereby assigns, transfers and conveys to Holder all of Maker's rights, title and interest in and to the CENTURY 21 Incentive Bonus. Amounts of CENTURY 21 Incentive Bonuses applied against the Principal shall correspondingly reduce amounts owed by Maker hereunder.

All payments shall be made in lawful money of the United States of America without set-off, offset, recoupment, deduction or counterclaim of any kind whatsoever. Payments, when made, shall first be applied to accrued and unpaid interest, if any, and then to Principal.

Maker and Co-Maker(s) may prepay this Note in whole or in part on any date without premium or penalty. No partial prepayment shall extend or postpone the due date of any subsequent installment payment or change the amount of the installment payment. Prepayments

will be applied without notation on this Note.

Holder of this Note may determine that Maker and Co-Maker(s) are in default and may accelerate the unpaid Principal and all interest accrued thereon to become immediately due and payable, without presentment for payment or any notice or demand, (A) if Maker, Co-Maker(s), endorser, surety or guarantor of this Note (i) suspends business; (ii) becomes insolvent or offers settlement to any creditors; (iii) files a petition in bankruptcy, either voluntary or involuntary; (iv) institutes any proceeding under any bankruptcy or insolvency laws relating to the relief of debtors; (v) makes an assignment for the benefit of creditors; or (vi) makes any false statement or representation orally or in writing, fails to furnish information, or fails to permit inspection of any books or records on demand of Holder, (B) upon default in payment of any Principal payment due hereunder, (C) upon default, in Holder's sole opinion, of any other agreement or note between Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements, or (D) upon termination or expiration of any agreement between Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements. For the purposes of this Note, a party shall be in default of an agreement if such party shall have been given notice of such default in accordance with the terms of any such agreement, and, as to those defaults for which such party is afforded an opportunity to cure pursuant to such agreement, such party shall have failed to make such cure within the applicable period provided. Maker's and Co-Maker(s)'s obligation to pay the Principal and interest thereon, if accelerated, shall be absolute and unconditional, and shall not be subject to any rights of set-off, offset or recoupment.

Maker and Co-Maker(s) agree to pay all expenditures made in any attempt to collect any amounts due pursuant to this Note. If any legal action is necessary to enforce or collect this Note, the prevailing party shall be entitled to reasonable attorney's fees (including in-house attorneys) and court costs and all costs of collection in addition to any other relief to which that party may be entitled.

Maker, Co-Maker(s) and all endorsers or guarantors of this Note, and each of them, hereby waive, to the fullest extent permitted by law, diligence, demand, notice of demand, presentment for payment, notice of non-payment, notice of dishonor, protest and notice of protest and specifically consent to and waive notice of any renewals, extensions, amendments or modifications of this Note, whether made to or in favor of Maker or any other person or persons. Holder reserves the right to modify the terms of this Note, grant extensions, notations, renewals, releases, discharges, compositions and compromises with any party liable under this Note, with or without any notice to or the consent of, and without discharging or affecting the obligations of, any other party liable under this Note. The claiming of any statute of limitations as a defense to any demand against Maker, Co-Maker(s) or any endorser or guarantor is expressly waived by each and all of said parties.

If this Note is being executed in connection with the acquisition or consolidation (by merger, acquisition or otherwise) of a real estate brokerage business from another person or entity, each of the Maker and Co-Makers acknowledges and agrees that while Holder and its representatives may have participated in the negotiation of the terms and conditions of, or in other aspects of, such acquisition and assisted with the preparation of documents (legal or otherwise) which memorialize the terms and conditions of such acquisition, Holder and its representatives were acting solely in the capacity of franchisor of its franchise system and were not retained by Maker or any Co-Maker in the capacity of agent, consultant or advisor. Maker and each Co-Maker acknowledges and agrees that it and they have not and will not rely upon any financial

advisory services, investment banking services, or any legal or accounting advice relating to the acquisition that have been provided by Holder or any of its employees, representatives, or affiliates and that neither Holder nor any of its affiliates has shall have any liability in connection therewith. Maker acknowledges and agrees that it has completed any due diligence and other investigations of the acquired office as Maker deemed appropriate. Additionally, Maker acknowledges and agrees that it has not relied on any representations made by Holder or any of its affiliates and its representatives in deciding to complete the acquisition and related transactions. Maker waives any and all claims against Holder and its officers, directors, shareholders, affiliates, employees and agents arising out of the acquisition or consolidation. In addition, each of Maker and Co-Makers acknowledges and agrees that neither Holder nor any of its affiliates has made any representations or warranties, nor furnished any information to them concerning any aspect of the Franchise Agreements or Maker's business.

This Note shall be construed and enforced in accordance with the laws of the State of New Jersey. The terms of this Note are confidential and will not be disclosed to any third party by Maker without the prior written consent of Holder, unless otherwise required by law.

This Note shall be the joint and several obligation of Maker, Co-Maker(s), all guarantors and endorsers, if any, and shall be binding upon them and their heirs, executors, personal representatives, successors and assigns and shall inure to the benefit of Holder and its successors and assigns. This Note shall not be assignable by Maker or any Co-Maker without the prior written consent of Holder.

IN WITNESS WHEREOF, the undersigned Maker and Co-Maker(s) have executed this Note as of the date first set forth above.

ATTEST:

_____
(Assistant) Secretary

_____
(Assistant) Secretary

_____
(Assistant) Secretary

MAKER: **Heritage Real Estate, Inc.**

By:_____
Name: **Sereta Churchill**
Title:

By:_____
Name: **Susanna Schlendorf**
Title:

By:_____
Name: **John W. Schlendorf, Jr.**
Title:

G21EXHD2 12/99

-2-

72284

WITNESS:

CO-MAKER(S):

_____
Sereta Churchill, individually

WITNESS:

CO-MAKER(S):

_Susanna Schlendorf_
Susanna Schlendorf, individually

WITNESS:

CO-MAKER(S):

_____
John W. Schlendorf, Jr., individually

WITNESS:

CO-MAKER(S):

_Thomas H. Churchill_
Thomas H. Churchill, individually

# EXHIBIT L

Office No. 300178-0001

COPY

## EXPANSION PROMISSORY NOTE

**$100,000.00**

Parsippany, New Jersey
Dated: January 1, 2005

FOR GOOD AND VALUABLE CONSIDERATION, the undersigned **Heritage Real Estate Inc., a California corporation** ("Maker") and **Sereta Churchill, Thomas Churchill, Jack Schlendorf, and Susanna Schlendorf** ("Co-Maker(s)") promise to pay to CENDANT FRANCHISE FINANCE, INC. or its successors or assigns ("Holder"), or order, on **December 31, 2006** at 1 Campus Drive, Parsippany, New Jersey, or at such other place as Holder may from time to time designate, in writing, the principal sum of **One-hundred thousand dollars ($100,000.00)** (the "Principal"), together with accrued interest thereon at the rate of **Five percent (5%)** per annum.

The Principal shall be paid in **three (3)** installments of **$37,077.42**, payable June 30, 2006; September 30, 2006; and December 31, 2006. Each installment shall be due and payable via application of Maker and Co-Maker's 2006 CENTURY 21 Incentive Bonus Award ("CIB") as said CIB is defined in the franchise agreements, as amended, by and between the parties (collectively the "Franchise Agreements"). In the event that Maker and Co-Maker are not entitled to receive any 2006 CIB and/or Maker and Co-Maker's 2006 CIB is insufficient to fully satisfy the outstanding Principal amount, Maker and Co-Maker shall make an additional payment, equal to the amount of any such deficiency. Maker and Co-Maker further expressly acknowledge and agree that Holder may apply the 2006 CIB against the outstanding Principal balance at any time, in its sole discretion, between the date of this Note and the standard annual date of payment of CIB to Maker and Co-Maker as set forth in the Franchise Agreements.

Consistent with the foregoing, and to the extent necessary, Maker and Co-Maker hereby assign, transfer and convey to Holder all of Maker and Co-Maker's rights, title and interest in and to the 2006 CIB.

All payments shall be made in lawful money of the United States of America without set-off, offset, recoupment, deduction or counterclaim of any kind whatsoever. Payments, when made, shall first be applied to accrued and unpaid interest, if any, and then to Principal.

Maker and Co-Maker(s) may prepay this Note in whole or in part on any date without premium or penalty. No partial prepayment shall extend or postpone the due date of any subsequent installment payment or change the amount of the installment payment. Prepayments will be applied without notation on this Note.

Holder may determine that Maker and Co-Maker(s) are in default of this Note and may accelerate the unpaid Principal and all interest accrued thereon to become immediately due and payable, without presentment for payment or any notice or demand, (A) if Maker, Co-Maker(s), endorser, surety or guarantor of this Note (i) suspends business; (ii) becomes insolvent or offers settlement to any creditors; (iii) files a petition in bankruptcy, either voluntary or involuntary; (iv) institutes any proceeding under any bankruptcy or insolvency laws relating to the relief of debtors; (v) makes an assignment for the benefit of creditors; or (vi) makes any false statement or representation orally or in writing, fails to furnish information, or fails to permit inspection of any books or records on demand of Holder, (B) upon default in payment of any Principal payment due hereunder, (C) upon default, in Holder's sole opinion, of any other agreement or note between

Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements, or (D) upon termination or expiration of any agreement between Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements. For the purposes of this Note, a party shall be in default of an agreement if such party shall have been given notice of such default in accordance with the terms of any such agreement, and, as to those defaults for which the such party is afforded an opportunity to cure pursuant to such agreement, such party shall have failed to make such cure within the applicable period provided. Maker's and Co-Maker(s)'s obligation to pay the Principal and interest thereon, if accelerated, shall be absolute and unconditional, and shall not be subject to any rights of set-off, offset or recoupment. In the event Maker or Co-Maker(s) fail to make any payment when due, including any payment due upon acceleration of this Note, the entire outstanding Principal shall thereafter bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or the highest rate allowed by law from its due date until paid in full.

Maker and Co-Maker(s) agree that any attorney-at-law may appear in any court of record situated in any County where the Maker and/or Co-Maker(s) then reside or in the County where Maker and/or Co-Maker signed this Note and being in the United States at any time after the debt evidenced shall become due, either at its stated maturity or by declaration, and waive the issuing and service of process and confess judgment against the Maker and Co-Maker(s), jointly and severally, in favor of the Holder, for the amount then owing hereon, together with the costs of suit and thereupon release all errors and waive all right of appeal.

Maker and Co-Maker(s) agrees to pay all expenditures made in any attempt to collect any amounts due pursuant to this Note. If any legal action is necessary to enforce or collect this Note, the prevailing party shall be entitled to reasonable attorney's fees (including in-house attorneys) and court costs and all costs of collection in addition to any other relief to which that party may be entitled.

Maker, Co-Maker(s) and all endorsers or guarantors of this Note, and each of them, hereby waive, to the fullest extent permitted by law, diligence, demand, notice of demand, presentment for payment, notice of non-payment, notice of dishonor, protest and notice of protest and specifically consent to and waive notice of any renewals, extensions, amendments or modifications of this Note, whether made to or in favor of Maker or any other person or persons. Holder reserves the right to modify the terms of this Note, grant extensions, notations, renewals, releases, discharges, compositions and compromises with any party liable under this Note, with or without any notice to or the consent of, and without discharging or affecting the obligations of, any other party liable under this Note. The claiming of any statute of limitations as a defense to any demand against Maker, Co-Maker(s) or any endorser or guarantor is expressly waived by each and all of said parties.

If this Note is being executed in connection with the acquisition or consolidation (by merger, acquisition or otherwise) of a real estate brokerage business from another person or entity, each of the Maker and Co-Makers acknowledges and agrees that while Holder and its representatives may have participated in the negotiation of the terms and conditions of, or in other aspects of, such acquisition and assisted with the preparation of documents (legal or otherwise) which memorialize the terms and conditions of such acquisition, Holder and its representatives were acting solely in the capacity of franchisor of its franchise system and were not retained by Maker or any Co-Maker in the capacity of agent, consultant or advisor. Maker and each Co-Maker acknowledges and agrees that it and they have not and will not rely upon any financial advisory services, investment banking services, or any legal or accounting advice relating to the acquisition that have been provided by Holder or any of its employees, representatives, or affiliates and that neither Holder nor any of its

affiliates shall have any liability in connection therewith. Maker acknowledges and agrees that it has completed any due diligence and other investigations of the acquired office as Maker deemed appropriate. Additionally, Maker acknowledges and agrees that it has not relied on any representations made by Holder or any of its affiliates and its representatives in deciding to complete the acquisition and related transactions. Maker waives any and all claims against Holder and its officers, directors, shareholders, affiliates, employees and agents arising out of the acquisition or consolidation. In addition, each of Maker and Co-Makers acknowledges and agrees that neither Holder nor any of its affiliates has made any representations or warranties, nor furnished any information to them concerning any aspect of the Franchise Agreements or Maker's business.

This Note shall be construed and enforced in accordance with the laws of the State of New Jersey. The terms of this Note are confidential and will not be disclosed to any third party by Maker without the prior written consent of Holder, unless otherwise required by law.

This Note shall be the joint and several obligation of Maker, Co-Maker(s), all guarantors and endorsers, if any, and shall be binding upon them and their heirs, executors, personal representatives, successors and assigns and shall inure to the benefit of Holder and its successors and assigns. This Note shall not be assignable by Maker or any Co-Maker without the prior written consent of Holder.

IN WITNESS WHEREOF, the undersigned Maker and Co-Maker(s) have executed this Note as of the date first set forth above.

ATTEST:

_Susanna M. Schlendorf_
(Assistant) Secretary

WITNESS:

MAKER: Heritage Real Estate, Inc.

By: _____
Name: Sereta Churchill
Title: Authorized Officer and Individually

CO-MAKER(S):

_____
Jack Schlendorf, individually

_____
Susanna Schlendorf, individually

_____
Thomas Churchill, individually

# EXHIBIT M