1   CALVIN E. DAVIS (State Bar No. 101640)
    Email:  cdavis@gordonrees.com
2   GARY J. LORCH (State Bar No. 119989)
    Email:  glorch@gordonrees.com
3   LISA K. GARNER (State Bar No. 155554)
    Email:  lgarner@gordonrees.com
4   GORDON & REES LLP
    633 West Fifth Street, Suite 4900
5   Los Angeles, CA  90071
    Telephone:  (213) 576-5000
6   Facsimile:  (213) 680-4470

7   Attorneys for Plaintiff
    CENTURY 21 REAL ESTATE LLC

8

9              UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA – OAKLAND BRANCH

11

12  CENTURY 21 REAL ESTATE LLC, a          )   Case No. C 06-7809 WDB
    Delaware limited liability company,     )
13  formerly known as CENTURY 21 REAL      )   **DECLARATION OF DEBBIE**
    ESTATE CORPORATION, a Delaware          )   **IULIANO IN SUPPORT OF**
14  corporation,                            )   **PLAINTIFF'S APPLICATIONS**
                                            )   **FOR RIGHT TO ATTACH**
15                    Plaintiff,            )   **ORDERS AND ORDERS FOR**
                                            )   **WRIT OF ATTACHMENT**
16            vs.                           )   **AGAINST DEFENDANTS**
                                            )   **HERITAGE REAL ESTATE,**
17  HERITAGE REAL ESTATE, INC., a           )   **INC., JOHN W. SCHLENDORF,**
    California corporation doing business as )   **JR., SUSANNA SCHLENDORF**
18  CENTURY 21 HERITAGE REAL                )   **AND SERETA CHURCHILL**
    ESTATE and HERITAGE REAL                )
19  ESTATE; JOHN W. SCHLENDORF,             )   Date:   February 14, 2007
    JR., an individual; SUSANNA             )   Time:   2:30 p.m.
20  SCHLENDORF, an individual; and          )   Crtm:   4 – 3rd Floor
    SERETA CHURCHILL, an individual,        )
21                                          )
                      Defendants.           )
22  _____ )

23       I, Debbie Iuliano, declare as follows:

24       1.      I am, and since April 2004 have been, Vice President of Operations

25  for Century 21 Real Estate LLC ("Century 21"), the Plaintiff in this action.  In my

26  capacity as Vice President of Operations, I am also a Custodian of Records for

27  documents generated and maintained by Century 21 in connection with franchise

28  agreements entered into by and between Century 21 and its franchisees, including

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

-1-

1   Heritage Real Estate, inc. ("Heritage"), John W. Schlendorf, Jr., Susanna

2   Schlendorf, and Sereta Churchill, the defendants in this action.  As to those

3   documents, I am aware of the methods of preparation of those documents, and the

4   source of information contained therein.  I have personal knowledge of the facts set

5   forth herein, and am authorized to make this Declaration on behalf of Century 21.

6   If called upon as a witness, I could and would testify competently under oath as to

7   all such matters.

8       2.      In my capacity as Vice-President of Operations for Century 21, I have

9   responsibility for the oversight of amounts due to Century 21 from its franchisees

10  (*i.e.*, accounts receivable) and for collecting same.  I am required to be familiar,

11  and I am familiar with, the basic terms of the franchise agreements entered into by

12  and between Century 21 and its franchisees, including Heritage.  I am also required

13  to be familiar with, and am familiar with, the types of charges made by Century 21

14  to its franchisees including, for example, royalty fees, national advertising fund

15  fees, and audit fees.  It is also part of my job responsibilities to be familiar with the

16  methods for determining the amounts due Century 21 from its franchisees, and I

17  am in fact familiar with those methods.

18      3.      Century 21 is a real estate agent franchise company now owned by

19  Realogy Corporation (formerly Cendant).  Century 21 was formerly known as

20  Century 21 Real Estate Corporation.

21      4.      Defendant Heritage is a  corporation.  Attached hereto as Exhibit "A"

22  is a true and correct copy of a printout from the California Secretary of State

23  showing Heritage's corporate status.

24      5.      As discussed in greater detail in the following paragraphs, John W.

25  Schlendorf, Susanna Schlendorf and Sereta Churchill each have represented

26  themselves to Century 21 as owners and officers of Heritage.

27      6.      Heritage has registered to do business under the fictitious names

28  "Century 21 Heritage Real Estate" and "Heritage Real Estate."  Attached hereto

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATIONS
CASE NO.  C 06-7809 WDB

1    collectively as Exhibit "B" are true and correct copies of fictitious business name

2    records obtained through Westlaw.

3    ### FIRST FRANCHISE AGREEMENT

4    7.    In or about September 2000, Century 21 and Heritage entered into a

5    "Century 21® Real Estate Franchise Agreement" (hereinafter referred to as the

6    "First Franchise Agreement").  A true and correct copy of the First Franchise

7    Agreement is attached hereto as Exhibit "C."  The Court is respectfully requested

8    to note that, on page 39 of the First Franchise Agreement, Mr. Schlendorf, Ms.

9    Schlendorf and Ms. Churchill represent themselves to own 25%, 25% and 50%,

10   respectively, of the shares in Heritage.  The Court also is respectfully requested to

11   note that, on page 40 of the First Franchise Agreement, Mr. Schlendorf, Ms.

12   Schlendorf and Ms. Churchill represent themselves to be the President,

13   Secretary/Treasurer and Vice-President, respectively, of Heritage.

14   8.    As set forth in Section 2 of the First Franchise Agreement, the

15   commencement date of the First Franchise was September 1, 2000.

16   9.    As set forth in Section 5 of the First Franchise Agreement, the

17   Franchise subject of the First Franchise Agreement was located at 3249 Mt. Diablo

18   Boulevard, Suite 101, Lafayette, CA 94549.

19   10.    Pursuant to the First Franchise Agreement, Heritage was granted a

20   non-exclusive right to use the CENTURY 21 System and certain CENTURY 21

21   trademarks and marketing system in connection with Heritage's real estate

22   brokerage office.  In return, Heritage agreed, among other things, to:

23          a.    Continuously operate the Franchise and not to abandon it;

24          b.    Pay a "royalty fee" equal to six percent (6%) of the gross

25   revenue earned, derived, and/or received by Heritage and its affiliates from certain

26   transactions, as set forth in Section 8A of the First Franchise Agreement, with a

27   minimum royalty fee of Five Hundred Dollars ($500) each month, as set forth in

28   Section 8C of the First Franchise Agreement;

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

-3-

DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATIONS
CASE NO.  C 06-7809 WDB

1          c.      Pay into the National Advertising Fund ("NAF") an amount

2    equal to two percent (2%) of Heritage's gross revenues, advertising expenses, as

3    set forth in Section 9A of the First Franchise Agreement; and

4          d.      Permit Century 21 to conduct an audit of Heritage's books, tax

5    returns and records, and to pay, with interest, any sums found due but not

6    previously paid as royalty fees or NAF fees, together with the audit fees and any

7    expenses, including attorney's fees, incurred by Century 21 in collecting the past

8    due royalty and NAF fees, as set forth in Section 11C(iv) of the First Franchise

9    Agreement.

10          11.     In order to secure Heritage's prompt payment and performance of its

11    obligations under the First Franchise Agreement, Mr. Schlendorf, Ms. Schlendorf

12    and Ms. Churchill each agreed to and did execute a Guaranty of Payment and

13    Performance (hereinafter the "First Guaranty").  A true and correct copy of that

14    First Guaranty is attached hereto as Exhibit "D."

15          12.     In order to assist Defendants with the establishment and continued

16    operation of their real estate brokerage office to operate under the First Franchise

17    Agreement, Century 21 agreed to lend collectively to Heritage, Mr. Schlendorf,

18    Ms. Schlendorf and Ms. Churchill the total sum of five hundred forty seven

19    thousand dollars ($547,000).  To confirm those loan, and their obligation to repay

20    same, Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill each executed

21    and delivered a series of Promissory Notes.  More specifically, on or about

22    September 1, 2000, Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill

23    executed a delivered a "Development Advance Promissory Note," reflecting a loan

24    in the principal amount of $402,500.  A true and correct copy of that

25    "Development Advance Promissory Note" is attached hereto as Exhibit "E."  On or

26    about February 8, 2002, Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms.

27    Churchill executed a delivered a "Development Advance Promissory Note,"

28    reflecting a loan in the principal amount of $20,000.  A true and correct copy of

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

-4-

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

that "Development Advance Promissory Note" is attached hereto as Exhibit "F."
On or about October 25, 2002, Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms.
Churchill executed a delivered a "Development Advance Promissory Note,"
reflecting a loan in the principal amount of $24,500.  A true and correct copy of
that "Development Advance Promissory Note" is attached hereto as Exhibit "G."
Finally, on or about January 1, 2005, Heritage, Mr. Schlendorf, Ms. Schlendorf and
Ms. Churchill executed a delivered an "Expansion Promissory Note," reflecting a
loan in the principal amount of $100,000.  A true and correct copy of that
"Expansion Promissory Note" is attached hereto as Exhibit "H."

13.    Each of the Development Advance Promissory Notes referenced
above required Defendants to re-pay one-ninth (1/9) of its principal each year if
certain targets for gross revenues, as defined in the Notes, were not met.

14.    The Expansion Promissory Note provides for repayment in three
installments of $37,077.42, payable June 30, 2006, September 30, 2006, and
December 31, 2006.

15.    Both the Development Advance Promissory Notes and the Expansion
Promissory Note provide that the entire balance can be declared due if Defendants
suspend business or upon the breach or default by Defendants of their obligations
under any other agreement between Century 21 and Defendants, including but not
limited to the Franchise Agreement.

16.    At some time after entering into the First Franchise Agreement, First
Guaranty and Notes, Defendants abandoned and/or ceased operating their
franchise.  Century 21 determined that Defendants had removed the Century 21
trademarks from the business and were no longer operating at the location set forth
in the First Franchise Agreement.  In addition, Defendants have failed to respond
to communications sent to them by Century 21.

17.    On or about August 6, 2006, Century 21 informed Defendants in
writing that their abandonment of the business constituted a material breach of the

DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATIONS
CASE NO.  C 06-7809 WDB

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

1  various Agreements they had entered into with Century 21, and that due to their

2  breach, Century 21 was terminating the Agreements effective as of August 30,

3  2006.  Defendants were also told that they were in default of their payment

4  obligations.  A true and correct electronic copy of Century 21's letter is attached as

5  Exhibit "I."

6       18.  Defendants have failed to make the payments due to Century 21 of the

7  royalty fees, NAF fees, and related charges due under the First Franchise

8  Agreement and First Guaranty.  Defendants also have failed to make the payments

9  due to Century 21 under the Development Advance Promissory Notes and the

10  Expansion Promissory Note.  In my capacity as Vice President of Operations, I

11  personally have reviewed the records created and maintained by Century 21 with

12  respect to the monies due from Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms.

13  Churchill under the First Franchise Agreement, the First Guaranty, the

14  Development Advance Promissory Notes and the Expansion Promissory Note.

15  The total amount due and owing, as of November 6, 2006, is $353,973.53,

16  exclusive of pre-judgment interest which has accrued on the outstanding balance to

17  date and exclusive of the attorney's fees and costs incurred and to be incurred in

18  the future by Century 21 in connection with its efforts to collect this amount.  The

19  outstanding balance due is broken down as follows:

20       a.  Royalty Fees  $26,360.55

21       b.  NAF Fees  $7,104.00

22       c.  Minimum Royalty Fee  $500.00

23       d.  Development Notes Principal  $208,766.42

24       e.  Expansion Note Principal  $111,242.56

25  Attached hereto as Exhibit "J" is a true and correct copy of a Custom Account

26  Status Report which, with one qualification, sets forth each of the transactions

27  comprising the total amount due.  The qualification is that the "DNP Transactions"

28  column, which is intended to set forth transactions related to the Development

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

1    Advance Promissory Notes, includes the amount of $71,111 more properly

2    allocated to the Development Advance Promissory Note entered into which respect

3    to the Second Franchise Agreement, as discussed below in Paragraphs 24-26 and

4    29.  In this Declaration, I have "backed out" that $71,111, as it is now included in

5    the total amounts due in connection with the Second Franchise Agreement.  Please

6    see Paragraph 30.  The Custom Account Status Report was prepared at my

7    direction, and under my supervision.  I personally have reviewed the Custom

8    Account Status Report for accuracy and, with the qualification set forth above, can

9    and hereby do confirm its accuracy.

10        19.    In addition, pursuant to the terms of the First Franchise Agreement, in

11   the event of a termination of the Agreement due to the material breach by

12   Defendants, Century 21 is entitled to recover lost future profits calculated as

13   follows based on a formula as set forth in the First Franchise Agreement at Section

14   19A:  the combined monthly average of all fees under the Agreement from

15   inception to termination multiplied by the number of months (or partial months)

16   remaining in the term of the Agreement, the present value of these amounts

17   discounted at a rate of eight percent (8%).  Pursuant to this calculation, and as of

18   November 6, 2006, Defendants owe Century 21 the sum of $1,294,043.54 under

19   the referenced provision for lost future profits in the First Franchise Agreement.

## SECOND FRANCHISE AGREEMENT

21        20.    In or about September 2000, Century 21 and Heritage entered into a

22   "Century 21® Real Estate Franchise Agreement" (hereinafter referred to as the

23   "Second Franchise Agreement").  A true and correct copy of the Second Franchise

24   Agreement is attached hereto as Exhibit "K."  The Court is respectfully requested

25   to note that, on page 39 of the Second Franchise Agreement, Mr. Schlendorf, Ms.

26   Schlendorf and Ms. Churchill represent themselves to own 25%, 25% and 50%,

27   respectively, of the shares in Heritage.  The Court also is respectfully requested to

28   note that, on page 40 of the Second Franchise Agreement, Mr. Schlendorf, Ms.

DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATIONS
CASE NO.  C 06-7809 WDB

1  Schlendorf and Ms. Churchill represent themselves to be the President,

2  Secretary/Treasurer and Vice-President, respectively, of Heritage.

3      21.    As set forth in Section 2 of the Second Franchise Agreement, the

4  commencement date of the Second Franchise was September 1, 2000.

5      22.    As set forth in Section 5 of the Second Franchise Agreement, the

6  Franchise subject of the Second Franchise Agreement was located at 185 Railroad

7  Avenue, Danville CA 94526.

8      23.    Pursuant to the Second Franchise Agreement, Heritage was granted a

9  non-exclusive right to use the CENTURY 21 System and certain CENTURY 21

10  trademarks and marketing system in connection with Heritage's real estate

11  brokerage office.  In return, Heritage agreed, among other things, to:

12      a.    Continuously operate the Franchise and not to abandon it;

13      b.    Pay a "royalty fee" equal to six percent (6%) of the gross

14  revenue earned, derived, and/or received by Heritage and its affiliates from certain

15  transactions, as set forth in Section 8A of the Second Franchise Agreement, with a

16  minimum royalty fee of Five Hundred Dollars ($500) each month, as set forth in

17  Section 8C of the Second Franchise Agreement;

18      c.    Pay into the National Advertising Fund ("NAF") an amount

19  equal to two percent (2%) of Heritage's gross revenues, advertising expenses, as

20  set forth in Section 9A of the Second Franchise Agreement; and

21      d.    Permit Century 21 to conduct an audit of Heritage's books, tax

22  returns and records, and to pay, with interest, any sums found due but not

23  previously paid as royalty fees or NAF fees, together with the audit fees and any

24  expenses, including attorney's fees, incurred by Century 21 in collecting the past

25  due royalty and NAF fees, as set forth in Section 11C(iv) of the Second Franchise

26  Agreement.

27      24.    In order to secure Heritage's prompt payment and performance of its

28  obligations under the Second Franchise Agreement, Mr. Schlendorf, Ms.

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATIONS
CASE NO.  C 06-7809 WDB

1  Schlendorf and Ms. Churchill each agreed to and did execute a Guaranty of

2  Payment and Performance (hereinafter the "Second Guaranty").  A true and correct

3  copy of that Second Guaranty is attached hereto as Exhibit "L."

4      25.    In order to assist Defendants with the establishment of their real estate

5  brokerage office under the Second Franchise Agreement, Century 21 agreed to

6  lend collectively to Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill

7  the sum of one hundred sixty thousand dollars ($160,000).  To confirm that loan,

8  and their obligation to repay same, Heritage, Mr. Schlendorf, Ms. Schlendorf and

9  Ms. Churchill each executed and delivered a "Development Advance Promissory

10 Note," dated December 11, 2000.  A true and correct copy of that "Development

11 Advance Promissory Note" is attached hereto as Exhibit "M."

12     26.    The Development Advance Promissory Note required Defendants to

13 re-pay one-ninth (1/9) of its principal each year if certain targets for gross

14 revenues, as defined in the Note, were not met.

15     27.    The Development Advance Promissory Note also provides that the

16 entire balance can be declared due if Defendants suspend business or upon the

17 breach or default by Defendants of their obligations under any other agreement

18 between Century 21 and Defendants, including but not limited to the Franchise

19 Agreement.

20     28.    At some time after entering into the Second Franchise Agreement,

21 Second Guaranty and Note, Defendants abandoned and/or ceased operating their

22 franchise.  Century 21 determined that Defendants had removed the Century 21

23 trademarks from the business and were no longer operating at the location set forth

24 in the Second Franchise Agreement.  In addition, Defendants have failed to

25 respond to communications sent to them by Century 21.

26     29.    On or about August 6, 2006, Century 21 informed Defendants in

27 writing that their abandonment of the business constituted a material breach of the

28 various Agreements they had entered into with Century 21, and that due to their

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

1  breach, Century 21 was terminating the Agreements effective as of August 30,
2  2006.  Defendants were also told that they were in default of their payment
3  obligations.  A true and correct electronic copy of Century 21's letter is attached as
4  Exhibit "N."

5       30.    Defendants have failed to make the payments due to Century 21 of the
6  royalty fees, NAF fees, and related charges due under the Second Franchise
7  Agreement and Second Guaranty.  Defendants also have failed to make the
8  payments due to Century 21 under the Development Advance Promissory Note.  In
9  my capacity as Vice President of Operations, I personally have reviewed the
10  records created and maintained by Century 21 with respect to the monies due from
11  Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill under the Second
12  Franchise Agreement, the Second Guaranty, and the Development Advance
13  Promissory Note.  The total amount due and owing, as of November 6, 2006, is
14  $113,216.29, exclusive of pre-judgment interest which has accrued on the
15  outstanding balance to date and exclusive of the attorney's fees and costs incurred
16  and to be incurred in the future by Century 21 in connection with its efforts to
17  collect this amount.  The outstanding balance due is broken down as follows:

18       a.    Royalty Fees        $35,000.86
19       b.    NAF Fees        $7,104.43
20       c.    Development Note Principal   $71,111.00
21  Attached hereto as Exhibit "O" is a true and correct copy of a Custom Account
22  Status Report which, with one qualification, sets forth each of the transactions
23  comprising the total amount due.  The one qualification is that this Custom
24  Account Status Report does not include the amounts due for the Development
25  Advance Promissory Note.  As discussed above in Paragraph 18, the amount due
26  for the Development Advance Promissory Note is shown in the Custom Account
27  Status Report prepared for the First Franchise.  The Custom Account Status Report
28  attached hereto was prepared at my direction, and under my supervision.  I

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATIONS
CASE NO.  C 06-7809 WDB

personally have reviewed the Custom Account Status Report for accuracy and, with the one qualification noted above, can and hereby do confirm its accuracy.

31.    In addition, pursuant to the terms of the Second Franchise Agreement, in the event of a termination of the Agreement due to the material breach by Defendants, Century 21 is entitled to recover lost future profits calculated as follows based on a formula as set forth in the Second Franchise Agreement at Section 19A:  the combined monthly average of all fees under the Agreement from inception to termination multiplied by the number of months (or partial months) remaining in the term of the Agreement, the present value of these amounts discounted at a rate of eight percent (8%).  Pursuant to this calculation, and as of November 6, 2006, Defendants owe Century 21 the sum of $1,841,533.58 under the referenced provision for lost future profits in the Second Franchise Agreement.

**THIRD FRANCHISE AGREEMENT**

32.    In or about April 2001, Century 21 and Heritage entered into a "Century 21® Real Estate Franchise Agreement" (hereinafter referred to as the "Third Franchise Agreement").  A true and correct copy of the Third Franchise Agreement is attached hereto as Exhibit "P."  The Court is respectfully requested to note that, on page 39 of the Third Franchise Agreement, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill represent themselves to own 25%, 25% and 50%, respectively, of the shares in Heritage.  The Court also is respectfully requested to note that, on page 45 of the Third Franchise Agreement, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill represent themselves to be the President, Secretary/Treasurer and Vice-President, respectively, of Heritage.

33.    As set forth in Section 2 of the Third Franchise Agreement, the commencement date of the Third Franchise was April 1, 2001.

34.    As set forth in Section 5 of the Third Franchise Agreement, the Franchise subject of the Third Franchise Agreement was located at 6211 LaSalle, Oakland, CA 94611.

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATIONS
CASE NO.  C 06-7809 WDB

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

35.    Pursuant to the Third Franchise Agreement, Heritage was granted a non-exclusive right to use the CENTURY 21 System and certain CENTURY 21 trademarks and marketing system in connection with Heritage's real estate brokerage office.  In return, Heritage agreed, among other things, to:

a.    Continuously operate the Franchise and not to abandon it;

b.    Pay a "royalty fee" equal to six percent (6%) of the gross revenue earned, derived, and/or received by Heritage and its affiliates from certain transactions, as set forth in Section 8A of the Third Franchise Agreement, with a minimum royalty fee of Five Hundred Dollars ($500) each month, as set forth in Section 8C of the Third Franchise Agreement;

c.    Pay into the National Advertising Fund ("NAF") an amount equal to two percent (2%) of Heritage's gross revenues, advertising expenses, as set forth in Section 9A of the Third Franchise Agreement; and

d.    Permit Century 21 to conduct an audit of Heritage's books, tax returns and records, and to pay, with interest, any sums found due but not previously paid as royalty fees or NAF fees, together with the audit fees and any expenses, including attorney's fees, incurred by Century 21 in collecting the past due royalty and NAF fees, as set forth in Section 11C(iv) of the Third Franchise Agreement.

36.    In order to secure Heritage's prompt payment and performance of its obligations under the Third Franchise Agreement, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill each agreed to and did execute a Guaranty of Payment and Performance (hereinafter the "Third Guaranty").  A true and correct copy of that Third Guaranty is attached hereto as Exhibit "Q."

37.    In order to assist Defendants with the establishment and continued operation of their real estate brokerage office under the Third Franchise Agreement, Century 21 agreed to lend collectively to Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill the total sum of two hundred sixty thousand

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

dollars ($260,000). To confirm those loans, and their obligation to repay same, Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill each executed and delivered a series of Promissory Notes. More specifically, on or about March 30, 2001, Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill executed a delivered a "Development Advance Promissory Note," reflecting a loan in the principal amount of $200,000. A true and correct copy of that "Development Advance Promissory Note" is attached hereto as Exhibit "R." On or about August 6, 2002, Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill executed a delivered a "Development Advance Promissory Note," reflecting a loan in the principal amount of $60,000. A true and correct copy of that "Development Advance Promissory Note" is attached hereto as Exhibit "S."

38.    Both of the Development Advance Promissory Notes referenced in the preceding paragraph required Defendants to re-pay one-ninth (1/9) of the principal each year if certain targets for gross revenues, as defined in the Notes, were not met.

39.    The Development Advance Promissory Notes also provide that the entire balance can be declared due if Defendants suspend business or upon the breach or default by Defendants of their obligations under any other agreement between Century 21 and Defendants, including but not limited to the Franchise Agreement.

40.    At some time after entering into the Third Franchise Agreement, Third Guaranty and Notes, Defendants abandoned and/or ceased operating their franchise. Century 21 determined that Defendants had removed the Century 21 trademarks from the business and were no longer operating at the location set forth in the Third Franchise Agreement. In addition, Defendants have failed to respond to communications sent to them by Century 21.

41.    On or about August 6, 2006, Century 21 informed Defendants in writing that their abandonment of the business constituted a material breach of the

1  various Agreements they had entered into with Century 21, and that due to their

2  breach, Century 21 was terminating the Agreements effective as of August 30,

3  2006.  Defendants were also told that they were in default of their payment

4  obligations.  A true and correct electronic copy of Century 21's letter is attached as

5  Exhibit "T."

6      42.  Defendants have failed to make the payments due to Century 21 of the

7  royalty fees, NAF fees, and related charges due under the Third Franchise

8  Agreement and Third Guaranty.  Defendants also have failed to make the payments

9  due to Century 21 under the Development Advance Promissory Notes.  In my

10  capacity as Vice President of Operations, I personally have reviewed the records

11  created and maintained by Century 21 with respect to the monies due from

12  Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill under the Third

13  Franchise Agreement, the Third Guaranty, and the Development Advance

14  Promissory Notes.  The total amount due and owing, as of November 6, 2006, is

15  $179,134.84, exclusive of pre-judgment interest which has accrued on the

16  outstanding balance to date and exclusive of the attorney's fees and costs incurred

17  and to be incurred in the future by Century 21 in connection with its efforts to

18  collect this amount.  The outstanding balance due is broken down as follows:

19      a.  Royalty Fees  $27,333.59

20      b.  NAF Fees  $7,356.16

21      c.  Development Notes Principal  $144,445.09

22  Attached hereto as Exhibit "U" is a true and correct copy of a Custom Account

23  Status Report which sets forth each of the transactions comprising the total amount

24  due.  This Custom Account Status Report was prepared at my direction, and under

25  my supervision.  I personally have reviewed the Custom Account Status Report for

26  accuracy, and can and hereby do confirm its accuracy.

27      43.  In addition, pursuant to the terms of the Third Franchise Agreement,

28  in the event of a termination of the Agreement due to the material breach by

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

-14-

Defendants, Century 21 is entitled to recover lost future profits calculated as follows based on a formula as set forth in the Third Franchise Agreement at Section 19A:  the combined monthly average of all fees under the Agreement from inception to termination multiplied by the number of months (or partial months) remaining in the term of the Agreement, the present value of these amounts discounted at a rate of eight percent (8%).  Pursuant to this calculation, and as of November 6, 2006, Defendants owe Century 21 the sum of $1,746,656.25 under the referenced provision for lost future profits in the Third Franchise Agreement.

## FOURTH FRANCHISE AGREEMENT

44.    In or about July 2001, Century 21 and Heritage entered into a "Century 21® Real Estate Franchise Agreement" (hereinafter referred to as the "Fourth Franchise Agreement").  A true and correct copy of the Fourth Franchise Agreement is attached hereto as Exhibit "V."  The Court is respectfully requested to note that, on page 40 of the Fourth Franchise Agreement, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill represent themselves to own 25%, 25% and 50%, respectively, of the shares in Heritage.  The Court also is respectfully requested to note that, on page 46 of the Fourth Franchise Agreement, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill represent themselves to be the President, Secretary/Treasurer and Vice-President, respectively, of Heritage.

45.    As set forth in Section 2 of the Fourth Franchise Agreement, the commencement date of the Fourth Franchise was July 1, 2001.

46.    As set forth in Section 5 of the Fourth Franchise Agreement, the Franchise subject of the Fourth Franchise Agreement was located at 1983 Second Street, Livermore CA 94550.

47.    Pursuant to the Fourth Franchise Agreement, Heritage was granted a non-exclusive right to use the CENTURY 21 System and certain CENTURY 21 trademarks and marketing system in connection with Heritage's real estate brokerage office.  In return, Heritage agreed, among other things, to:

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATIONS
CASE NO.  C 06-7809 WDB

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

a.    Continuously operate the Franchise and not to abandon it;

b.    Pay a "royalty fee" equal to six percent (6%) of the gross revenue earned, derived, and/or received by Heritage and its affiliates from certain transactions, as set forth in Section 8A of the Fourth Franchise Agreement, with a minimum royalty fee of Five Hundred Dollars ($500) each month, as set forth in Section 8C of the Fourth Franchise Agreement;

c.    Pay into the National Advertising Fund ("NAF") an amount equal to two percent (2%) of Heritage's gross revenues, advertising expenses, as set forth in Section 9A of the Fourth Franchise Agreement; and

d.    Permit Century 21 to conduct an audit of Heritage's books, tax returns and records, and to pay, with interest, any sums found due but not previously paid as royalty fees or NAF fees, together with the audit fees and any expenses, including attorney's fees, incurred by Century 21 in collecting the past due royalty and NAF fees, as set forth in Section 11C(iv) of the Fourth Franchise Agreement.

48.    In order to secure Heritage's prompt payment and performance of its obligations under the Fourth Franchise Agreement, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill each agreed to and did execute a Guaranty of Payment and Performance (hereinafter the "Fourth Guaranty").  A true and correct copy of that Fourth Guaranty is attached hereto as Exhibit "W."

49.    In order to assist Defendants with the establishment of their real estate brokerage office under the Fourth Franchise Agreement, Century 21 agreed to lend collectively to Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill the sum of eighty five thousand dollars ($85,000).  To confirm that loan, and their obligation to repay same, Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill each executed and delivered a "Development Advance Promissory Note," dated July 9, 2001.  A true and correct copy of that "Development Advance Promissory Note" is attached hereto as Exhibit "X."

1    50.    The Development Advance Promissory Note required Defendants to

2    re-pay one-ninth (1/9) of its principal each year if certain targets for gross

3    revenues, as defined in the Note, were not met.

4    51.    The Development Advance Promissory Note also provides that the

5    entire balance can be declared due if Defendants suspend business or upon the

6    breach or default by Defendants of their obligations under any other agreement

7    between Century 21 and Defendants, including but not limited to the Franchise

8    Agreement.

9    52.    At some time after entering into the Fourth Franchise Agreement,

10    Fourth Guaranty and Note, Defendants abandoned and/or ceased operating their

11    franchise.  Century 21 determined that Defendants had removed the Century 21

12    trademarks from the business and were no longer operating at the location set forth

13    in the Fourth Franchise Agreement.  In addition, Defendants have failed to respond

14    to communications sent to them by Century 21.

15    53.    On or about August 6, 2006, Century 21 informed Defendants in

16    writing that their abandonment of the business constituted a material breach of the

17    various Agreements they had entered into with Century 21, and that due to their

18    breach, Century 21 was terminating the Agreements effective as of August 30,

19    2006.  Defendants were also told that they were in default of their payment

20    obligations.  A true and correct electronic copy of Century 21's letter is attached as

21    Exhibit "Y."

22    54.    Defendants have failed to make the payments due to Century 21 of the

23    royalty fees, NAF fees, and related charges due under the Fourth Franchise

24    Agreement and Fourth Guaranty.  Defendants also have failed to make the

25    payments due to Century 21 under the Development Advance Promissory Note.  In

26    my capacity as Vice President of Operations, I personally have reviewed the

27    records created and maintained by Century 21 with respect to the monies due from

28    Heritage, Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill under the Fourth

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATIONS
CASE NO.  C 06-7809 WDB

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

1  Franchise Agreement, the Fourth Guaranty, and the Development Advance

2  Promissory Note.  The total amount due and owing, as of November 6, 2006, is

3  $100,007.14, exclusive of pre-judgment interest which has accrued on the

4  outstanding balance to date and exclusive of the attorney's fees and costs incurred

5  and to be incurred in the future by Century 21 in connection with its efforts to

6  collect this amount.  The outstanding balance due is broken down as follows:

7        a.    Royalty Fees      $44,985.32

8        b.    NAF Fees      $7,800.00

9        c.    Development Note Principal      $47,221.82

10  Attached hereto as Exhibit "Z" is a true and correct copy of a Custom Account

11  Status Report which sets forth each of the transactions comprising the total amount

12  due.  This Custom Account Status Report was prepared at my direction, and under

13  my supervision.  I personally have reviewed the Custom Account Status Report for

14  accuracy, and can and hereby do confirm its accuracy.

15      55.    In addition, pursuant to the terms of the Fourth Franchise Agreement,

16  in the event of a termination of the Agreement due to the material breach by

17  Defendants, Century 21 is entitled to recover lost future profits calculated as

18  follows based on a formula as set forth in the Fourth Franchise Agreement at

19  Section 19A:  the combined monthly average of all fees under the Agreement from

20  inception to termination multiplied by the number of months (or partial months)

21  remaining in the term of the Agreement, the present value of these amounts

22  discounted at a rate of eight percent (8%).  Pursuant to this calculation, and as of

23  November 6, 2006, Defendants owe Century 21 the sum of $1,370,261.63 under

24  the referenced provision for lost future profits in the Fourth Franchise Agreement.

25      52.    In summary, the total owed to Century 21 by the Defendants in this

26  action, as of November 6, 2006, is as follows:

27      First Franchise Agreement, Guaranty and Notes      $1,648,017.07

28      Second Franchise Agreement, Guaranty and Note      $1,954,749.87

DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATIONS
CASE NO.  C 06-7809 WDB

| | |
|---|---|
| Third Franchise Agreement, Guaranty and Notes | $1,925,791.09 |
| Fourth Franchise Agreement, Guaranty and Note | $1,470,268.77 |
| **TOTAL** | **$6,998,826.80** |

Executed this 21 day of December 2006, at Parsippany, New Jersey.

I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct.

_____
DEBBIE IULIANO

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

-19-
DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATIONS
CASE NO. C 06-7809 WDB