**EXHIBIT L**

## GUARANTY OF PAYMENT AND PERFORMANCE

This Guaranty of Payment and Performance is given by the undersigned, **John W. Schlendorf, Jr., Susanna Schlendorf, Sereta Churchill** (individually a "Guarantor" and collectively "Guarantors"), this _____ day of _____, 20_____ to Century 21 Real Estate Corporation ("CENTURY 21"), in order to induce CENTURY 21 to accept **Heritage Real Estate, Inc.** ("Franchisee") as a franchisee of CENTURY 21.

Each Guarantor does hereby, jointly and severally, to the extent herein provided, guaranty to CENTURY 21 the prompt payment and performance when due of all obligations of Franchisee under that certain Franchise Agreement bearing even date hereof, including any renewal, replacement or modification of said Franchise Agreement, and any other franchise agreement or other agreement now existing or hereafter entered into between Franchisee and CENTURY 21. This Guaranty shall apply to the initial franchise fee, all franchise royalty or service fees, NAF contributions, charges for manuals, supplies, materials, services and products furnished by CENTURY 21, audit fees, regional and local council assessments, assignment fees, attorneys fees, referral fees, obligations to indemnify and other such charges, fees and assessments provided for under the aforementioned Franchise Agreement.

This Guaranty shall be deemed continuing in nature. This Guaranty shall not be discharged by renewal of any claims guaranteed by this instrument, the suffering of any indulgence to any debt or extension of time of payment thereof. Presentment, demand, protest, notice of protest and dishonor, and diligence in collecting any obligation under said Franchise Agreement are each and all waived by Guarantors and/or acknowledged as inapplicable. CENTURY 21 shall not be required to pursue any remedy as to said obligations against Franchisee as a condition of the obligation hereunder of Guarantors.

It shall be a condition to the enforcement of this Guaranty that Guarantors shall be given five (5) days prior written notice, either hand-delivered or sent by mail to Guarantors at Franchisee's address or such other place designated in writing by Guarantors to CENTURY 21. Said notice shall state that non-payment or non-performance has occurred, that each Guarantor is liable for all obligations owing to CENTURY 21 on account of the referenced Franchise Agreement, and that demand is made upon said Guarantor for payment of said obligations. Failure to give such notice shall not discharge Guarantor but merely prevent enforcement until so given.

The obligation of each Guarantor hereunder is an absolute and unconditional obligation, and constitutes a guaranty of payment and performance.

Each Guarantor hereby expressly waives notice of the acceptance of this Guaranty and agrees that no action or failure to act by CENTURY 21, including, but not limited to, CENTURY 21's granting of additional time to pay, shall in any way limit or discharge Guarantor's liability hereunder. Notwithstanding anything herein to the contrary, this Guaranty shall not be applicable to and each Guarantor shall not be liable or responsible for these certain amounts which might otherwise be payable to CENTURY 21 as a result of termination of the Franchise Agreement prior to its expiration date if all of the following conditions are satisfied:

Exhibit L – Page 132

1.  The Franchise Agreement is terminated pursuant to a mutual termination agreement arising out of either a) the illness of the Franchisee's majority stockholder(s), or b) the retirement of the Franchisee's majority stockholder(s);

2.  The majority stockholder(s) does not act as a real estate broker or associate broker, either directly or indirectly, within twenty (20) miles of Franchisee's Approved Location (as defined in the Franchise Agreement) during the time period which is equal to the remaining term of the Franchise Agreement at the time of the mutual termination (the "Remaining Time Period"); and

3.  The Franchisee has paid all royalty or service fees, NAF contributions, Broker Council fees, and any other charges and fees which were due and owing or otherwise accrued prior to the effective date of termination.

In the event of a mutual termination as above provided, Guarantors will not be responsible to CENTURY 21 or to Franchisee's Broker Council for any lost future profits. All other amounts payable by Guarantors under this Guaranty shall remain due and payable.

Notwithstanding the provisions above, if after the execution of a mutual termination agreement based on the illness or retirement of Franchisee's majority stockholder(s), said majority stockholder(s) nonetheless acts, directly or indirectly, as a real estate broker or associate broker, within twenty (20) miles of Franchise's Approved Location (as defined in the Franchise Agreement) at any time during the Remaining Time Period, Guarantors shall remain responsible to CENTURY 21 for all losses suffered by CENTURY 21 during the Remaining Time Period including those otherwise excluded above.

Individually and Personally:

By _____

    John W. Schlendorf, Jr.

Individually and Personally:

By _____

    Susanna Schlendorf

Individually and Personally:

By _____

    Sereta Churchill

Exhibit L – Page 133

**EXHIBIT M**

COPY

Office No.

## DEVELOPMENT ADVANCE PROMISSORY NOTE

$160,000                                              Parsippany, New Jersey
                                                      Dated: **December 11, 2000**

FOR GOOD AND VALUABLE CONSIDERATION, the undersigned **Heritage Real Estate, Inc.,** a **California Corporation** ("Maker") promises to pay to CENTURY 21 REAL ESTATE CORPORATION or its successors or assigns ("Holder"), or order, on the date eight years from the first Determination Date (as defined below), at 6 Sylvan Way, Parsippany, New Jersey, or at such other place as Holder may from time to time designate, in writing, the principal sum of **One Hundred Sixty Thousand and 00/100 Dollars** ($**160,000**)(the "Principal") which amount shall, except as set forth below, bear no interest.

If (a) Maker is not in default (a default being present only after notice and the expiration of any "cure" period and in the absence of an event of force majeure) with respect to its obligations under any franchise agreements with Holder, as each may be amended (the "Franchise Agreements") (including payment of royalty fees, service fees and NAF contributions thereunder) and (b) the real estate brokerage office locations operated by Maker as a CENTURY 21 Firm have Gross Revenues (as such term is defined in the Franchise Agreement) on which royalties are payable under the Franchise Agreements, over the first full calendar year (i.e. Calendar Year 2001) beginning on or after the Commencement (as defined in the Franchise Agreement in conjunction with which this Note was executed in connection with) of at least eight million five hundred fifteen thousand one hundred forty one dollars (**$8,515,141**), and over each full calendar year thereafter (each such calendar year ending on a "Determination Date") has Gross Revenues (as defined above) which average (calculated by adding the Gross Revenues for the current and all prior full calendar years and dividing said sum by the number of such calendar years) at least eight million five hundred fifteen thousand one hundred forty one dollars (**$8,515,141**) per year, then on each such Determination Date, one-ninth of the Principal (the "Yearly Principal") shall be forgiven. On each such Determination Date, to the extent no Principal has been forgiven on such date, an amount of Principal equal to the Yearly Principal shall become due and payable within thirty (30) days of the demand therefor. The last Determination Date shall be the date eight years from the first Determination Date. In the event Maker fails to make any payment when due, including any payment due upon acceleration of this Note, the entire outstanding Principal shall thereafter bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or the highest rate allowed by law from its due date until paid in full.

Notwithstanding the foregoing installment payments, Maker acknowledges and agrees that Holder, at its sole option and discretion, without notice, may apply to the outstanding due and payable Principal and accrued and unpaid interest amount evidenced by this Note any and all payments due to Maker from Holder under the CENTURY 21 Incentive Bonus set forth in any Franchise Agreement, if or when any such CENTURY 21 Incentive Bonus becomes due or payable to Maker. If and to the extent necessary, Maker hereby assigns, transfers and conveys to Holder all of Maker's rights, title and interest in and to the CENTURY 21 Incentive Bonus. Amounts of CENTURY 21 Incentive Bonuses applied against the Principal and interest shall correspondingly reduce amounts owed by Maker hereunder.

All payments shall be made in lawful money of the United States of America without set-

C21EXHD2 12/99                                                    72284

off, offset, recoupment, deduction or counterclaim of any kind whatsoever. Payments, when made, shall first be applied to accrued and unpaid interest, if any, and then to Principal.

Maker may prepay this Note in whole or in part on any date without premium or penalty. No partial prepayment shall extend or postpone the due date of any subsequent installment payment or change the amount of the installment payment. Prepayments will be applied without notation on this Note.

Holder of this Note may determine that Maker is in default and may accelerate the unpaid Principal and all interest accrued thereon to become immediately due and payable, without presentment for payment or any notice or demand. (A) If Maker, endorser, surety or guarantor of this Note (i) voluntarily suspends business; (ii) becomes insolvent or offers settlement to any creditors; (iii) files a petition in bankruptcy or is the subject of an involuntary petition in bankruptcy which is not dismissed within ninety (90) days after its filing; (iv) institutes any proceeding under any bankruptcy or insolvency laws relating to the relief of Maker from its debtors; (v) makes an assignment for the benefit of creditors; or (vi) makes any material false statement or representation orally or in writing, fails to furnish contractually required information, or fails to permit contractually required inspection of any books or records on demand of Holder, (B) upon default in payment of any Principal payment due hereunder, (C) upon default, in Holder's reasonable opinion, of any other agreement or note between Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements, or (D) upon early termination of any agreement between Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements and/or upon expiration of any Franchise Agreements. For the purposes of this Note, a party shall be in default of an agreement if no event of force majeure is present and if such party shall have been given notice of such default in accordance with the terms of any such agreement, and, as to those defaults for which such party is afforded an opportunity to cure pursuant to such agreement, such party shall have failed to make such cure within the applicable period provided. Maker's obligation to pay the Principal and interest thereon, if accelerated, shall be absolute and unconditional, and shall not be subject to any rights of set-off, offset or recoupment.

Maker agrees to pay all expenditures made in any attempt to collect any amounts due pursuant to this Note. If any legal action is necessary to enforce or collect this Note, the prevailing party shall be entitled to reasonable attorney's fees (including in-house attorneys) and court costs and all costs of collection in addition to any other relief to which that party may be entitled.

Maker and all endorsers or guarantors of this Note, and each of them, hereby waive, to the fullest extent permitted by law, diligence, demand, notice of demand, presentment for payment, notice of non-payment, notice of dishonor, protest and notice of protest and specifically consent to and waive notice of any renewals, extensions, amendments or modifications of this Note, whether made to or in favor of Maker or any other person or persons. Holder reserves the right to modify the terms of this Note, grant extensions, notations, renewals, releases, discharges, compositions and compromises with any party liable under this Note, with or without any notice to or the consent of, and without discharging or affecting the obligations of, any other party liable under this Note. The claiming of any statute of limitations as a defense to any demand against Maker or any endorser or guarantor is expressly waived by each and all of said parties.

If this Note is being executed in connection with the acquisition or consolidation (by merger, acquisition or otherwise) of a real estate brokerage business from another person or

C21EXHD2 12/99                                                                 72284

entity, Maker acknowledges and agrees that while Holder and its representatives may have participated in the negotiation of the terms and conditions of, or in other aspects of, such acquisition and assisted with the preparation of documents (legal or otherwise) which memorialize the terms and conditions of such acquisition. Holder and its representatives were acting solely in the capacity of franchisor of its franchise system and were not retained by Maker in the capacity of agent, consultant or advisor. Maker acknowledges and agrees that it has not and will not rely upon any financial advisory services, investment banking services, or any legal or accounting advice relating to the acquisition that have been provided by Holder or any of its employees, representatives, or affiliates and that neither Holder nor any of its affiliates has shall have any liability in connection therewith. Maker acknowledges and agrees that it has completed any due diligence and other investigations of the acquired office as Maker deemed appropriate. Additionally, Maker acknowledges and agrees that it has not relied on any representations made by Holder or any of its affiliates and its representatives in deciding to complete the acquisition and related transactions. Maker waives any and all claims against Holder and its officers, directors, shareholders, affiliates, employees and agents arising out of the acquisition or consolidation. In addition, Maker acknowledges and agrees that neither Holder nor any of its affiliates has made any representations or warranties, nor furnished any information to them concerning any aspect of the Franchise Agreements or Maker's business.

This Note shall be construed and enforced in accordance with the laws of the State of New Jersey. The terms of this Note are confidential and will not be disclosed to any third party by Maker without the prior written consent of Holder, except to Maker's tax advisors and commercial lenders or unless otherwise required by law.

This Note shall be the joint and several obligation of Maker, all guarantors and endorsers, if any, and shall be binding upon them and their heirs, executors, personal representatives, successors and assigns and shall inure to the benefit of Holder and its successors and assigns. This Note shall not be assignable by Maker without the prior written consent of Holder.

IN WITNESS WHEREOF, the undersigned Maker has executed this Note as of the date first set forth above.

ATTEST: _Sereta Churchill_

_Susanna Schlendorf_
(Assistant) Secretary

MAKER: Heritage Real Estate, Inc.

By: _____
Name:  John Schlendorf, Jr.
Title:   President

By: _Susanna Schlendorf_
Name:  Susanna Schlendorf
Title:   Secretary

**EXHIBIT N**

August 16, 2006

**VIA OVERNIGHT CARRIER AND FIRST CLASS MAIL**

**PERSONAL & CONFIDENTIAL**
Mr. John W. Schlendorf, Jr.
Ms. Susanna Schlendorf
Ms. Sereta Churchill
CENTURY 21 Heritage Real Estate
3249 Mt. Diablo Boulevard, Suite 101
Lafayette, CA 94549

Re:    Notice of Intent to Terminate of CENTURY 21® Real Estate Franchise Agreement #300178-0002 located at 185 Railroad Avenue, Danville, CA 94526 by and between Century 21 Real Estate LLC FKA Century 21 Real Estate Corporation (herein referred to as "Century 21") and Heritage Real Estate, Inc., a California corporation (herein referred to as "You" or "Franchisee"), commencing September 1, 2000 expiring December 31, 2014.

Dear Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill:

Please be advised that this letter shall notify you of your default of the above referenced Agreement. Your unilateral abandonment of the franchise and the sale of the business to third parties without Century 21's approval are material defaults under Paragraph 17.H of the Agreement. Furthermore, the abandonment and sale of the franchise is intentional and/or gross misconduct for which Century 21 may terminate the referenced Franchise Agreement upon notice to you, and without an opportunity to cure, in accordance with paragraph 17 M (ii).    Accordingly your Franchise Agreement is terminated effective August 30, 2006.

As of the date of this letter, you have also breached Paragraphs 8, 9 and 11 of the Agreement by failing to tender payment when due. Your pasts due account balances are as follows:

| | |
|---|---|
| National Advertising Fees Billed to Date: | $   6,341.00 |
| Royalty Fees Billed to Date: | $ 35,000.86 |
| **TOTAL Amount Due:** | **$ 41,341.86** |
| | |
| Accelerated Development Advance Note Balance Due | |
| Upon Failure to Cure this Intent to Terminate: | $ 71,111.00 |
| Total Amount Due Upon Termination Including the | |
| **Accelerated Development Advance Promissory Note:** | **$ 112,452.86** |

Additionally, you are in default of Paragraph 8A of the Agreement in that, since July 26, 2006, you have failed to consistently report on closed transactions.

Please forward the required funds to the attention of Debbie Iuliano, Vice President of Financial Services at 1 Campus Drive, Parsippany, New Jersey 07054 on or before **August 29, 2006**. Century 21 may elect to forward your outstanding account balances to a collection agency or initiate legal proceedings to collect the balances due, as well as the damages Century 21 has incurred because of your failure to comply with your contractual obligations. Upon a final review, which may include a post termination audit, additional amounts may be due for National Advertising Fund (NAF) contributions and service fees, and in that event, an additional invoice will be forwarded to your attention.

For your ready reference, I have attached a copy of the procedures set forth in your Franchise Agreement, which you are required to follow after termination of the Franchise. Note that the post termination procedures include, but are not limited to, the requirement that you must <u>immediately cease the use of all Century 21 Trademarks</u>. An inspection will be conducted to confirm that you have ceased identifying yourself, as a Century 21 franchise and that you are not utilizing the Century 21 name in any respect. The de-identification procedures require you to remove all signs, cease all advertising, remove any listings in any phonebooks, and destroy all letterhead or documents referencing Century 21, among other actions. Immediate injunctive and other legal relief will be sought if you fail to stop using the Century 21 mark at once.

Very truly yours,


Rachel L. Motyl
Manager of Franchise Compliance


cc.     Lynette Carhart-Gladdis, Esq.
        Kim Toomey, Esq.
        Dale Omer
        Renee Whiteside
        Debbie Iuliano
        Jean Wenz
        Shalina Rodriguez
        Danny Smith
        Mike Piccola
        Jeanette Halkias
        Rich DeNicola
        Lisa Sanborn
        Franchise Admin. File

**EXHIBIT O**

## REAL ESTATE FRANCHISE GROUP BALANCE REQUEST FORM

The Reason For This Balance Request:
Legal - Revised Balances
Created By - Real Estate Financial Services



### DETAILED OFFICE INFORMATION

| | | | | |
|---|---|---|---|---|
| Office Basics | 300178-0002   Status=TE   TYPE=BO | Brand - Royalty Fee | CENTURY 21 | 6.00 % |
| Owner Count - Top % | 1   Sereta Churchill (50) | Commencement Date | August 30, 2000 | |
| D/B/A Office Name | CENTURY 21 Heritage Real Estate | Contract Effective Date | August 30, 2000 | |
| Legal Entity Name | Heritage Real Estate, Inc. | Expiration Date | December 31, 2014 | |
| Street Adress | 185 Railroad Avenue | Last Audit Date | November 09, 2004 | |
| City, State ZIP | Danville  CA 94526 | Last Audit Period | August 01, 2002 - August 31, 2004 | |
| Phone Number | (925) 314-1500 | Last TR Close Date | July 21, 2006 | |
| Office Email Address | relocation@C21hre.com | Last TR Paid Date | June 02, 2006 | |

### DETAILED OFFICE PRODUCTION ANALYSIS

| | | | | |
|---|---|---|---|---|
| AGCI | 0.00 | Current Month - Current Year | AGCI | 1,399,324.79 Year to Date - Current Year |
| AGCI | 262,795.00 | Current Month - Prior Year | AGCI | 4,168,328.21 Year to Date - Prior Year |

### BILLED OUTSTANDING BALANCE DETAIL

| | | |
|---|---|---|
| ATRF | 0.00 | Audit Royalty Fee |
| AUI | 0.00 | Audit Interest |
| NAF | 7,104.43 | National Advertising Fees |
| TRF | 35,090.86 | Royalty Fee |
| TOTAL | 42,195.29 | Total Billed |

### UNBILLED OUTSTANDING BALANCE DETAIL

| | | | | |
|---|---|---|---|---|
| DNP | | Development Note Principal | IFP | Intial Franchise Note Principal |
| ENP | | Expansion Note Principal | PNP | Promissory Note Principal |
| | | | TOTAL | Total Notes Unbilled |

### TOTAL BILLING SUMMARY

| | | |
|---|---|---|
| TOTAL: ALL BILLED | ------------------------------- | 42,195.29 |
| TOTAL: ALL UNBILLED | ------------------------------- | |
| LESS UNAPPLIED CASH | ------------------------------- | 0.00 |
| TOTAL: ALL BILLED AND UNBILLED DUE | ------------------------------- | 42,195.29 |

### REAL ESTATE FINANCIAL SERVICES CONTACTS AND DATES

| | | | |
|---|---|---|---|
| Prepared By: | ZZ - C21 - Terminated () | Prepared On: | November 06, 2006 12:53 PM |
| Approved By: | | Approved On | 11/6/06 |

Cendant Financial
Order By: Customer
Account Status:

Custom Account Status Report

Report Date: 06-NOV-2006 12:04
Page:                    4 of

Collector: ZZ - C21 - T Customer Name: Heritage Real Estate

| Billing Number | Number | Invoice Type Date | Due Date | Currency | Original Amount | Functional Amount | Balance Due |
|---|---|---|---|---|---|---|---|
| 000000001974 | 204005030 | TRF | 26-JUL-06 | 26-JUL-06 | USD | 2,249.10 | 2,249.10 | 2,249.10 |

TRF Transaction Type Subtotal:    2,249.10

Customer Location Subtotal:    26,360.55

Customer Number: C21300178    Customer Location: C2130017800002    425,084.53

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 200601NAF00A | 203634924 | NAF | 03-FEB-06 | 23-FEB-06 | USD | 1,049.00 | 1,049.00 |
| 200602NAF00A | 203689014 | NAF | 03-MAR-06 | 23-MAR-06 | USD | 1,049.00 | 1,049.00 |
| 200603NAF00A | 203752647 | NAF | 04-APR-06 | 24-APR-06 | USD | 1,049.00 | 1,049.00 |
| 200604NAF00A | 203817692 | NAF | 03-MAY-06 | 23-MAY-06 | USD | 1,049.00 | 1,049.00 |
| 200605NAF00A | 203889865 | NAF | 03-JUN-06 | 23-JUN-06 | USD | 1,049.00 | 1,049.00 |
| 200606NAF00A | 203953717 | NAF | 03-JUL-06 | 23-JUL-06 | USD | 1,096.00 | 1,096.00 |
| 200607NAF00A | 204032249 | NAF | 03-AUG-06 | 23-AUG-06 | USD | 490.43 | 490.43 |
| 200608NAF00A | 204096792 | NAF | 03-SEP-06 | 23-SEP-06 | USD | 363.00 | 363.00 |

NAF Transaction Type Subtotal:    7,194.43

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 00000000002152 | 203803420 | TRF | 28-APR-06 | 28-APR-06 | USD | 914.76 | 914.76 |
| 00000000002170 | 203803437 | TRF | 28-APR-06 | 28-APR-06 | USD | 577.43 | 577.43 |
| 00000000002137 | 203822303 | TRF | 07-APR-06 | 07-APR-06 | USD | 981.00 | 981.00 |
| 00000000002144 | 203824127 | TRF | 04-MAY-06 | 04-MAY-06 | USD | 701.10 | 701.10 |
| 00000000002112 | 203825611 | TRF | 03-MAY-06 | 03-MAY-06 | USD | 465.00 | 465.00 |
| 00000000002107 | 203826793 | TRF | 04-MAY-06 | 04-MAY-06 | USD | 1,438.50 | 1,438.50 |
| 00000000002103 | 203831414 | TRF | 08-MAY-06 | 08-MAY-06 | USD | 837.00 | 837.00 |

Cendant Financial
Order By:  Customer
Account Status:

Custom Account Status  Report

Report Date: 06-NOV-2006  12:04
Page:           5 of 12

| Billing Number | Invoice Number | Type | Date | Due Date | Currency | Original Amount | Functional Amount | Balance Due |
|---|---|---|---|---|---|---|---|---|
| 00000000002182 | 203831713 | TRF | 28-APR-06 | 28-APR-06 | USD | 150.00 | 150.00 | 150.00 |
| 00000000002150 | 203836430 | TRF | 11-MAY-06 | 11-MAY-06 | USD | 1,089.00 | 1,089.00 | 1,089.00 |
| 00000000002194 | 203851790 | TRF | 19-MAY-06 | 19-MAY-06 | USD | 944.91 | 944.91 | 944.91 |
| 00000000002155 | 203852076 | TRF | 19-MAY-06 | 19-MAY-06 | USD | 1,018.80 | 1,018.80 | 1,018.80 |
| 00000000002118 | 203876774 | TRF | 31-MAY-06 | 31-MAY-06 | USD | 822.00 | 822.00 | 822.00 |
| 00000000002120 | 203881978 | TRF | 01-JUN-06 | 01-JUN-06 | USD | 783.90 | 783.90 | 783.90 |
| 00000000002162 | 203882415 | TRF | 31-MAY-06 | 31-MAY-06 | USD | 930.00 | 930.00 | 930.00 |
| 00000000002197 | 203886700 | TRF | 02-JUN-06 | 02-JUN-06 | USD | 1,200.00 | 1,200.00 | 1,200.00 |
| 00000000002183 | 203895640 | TRF | 05-JUN-06 | 05-JUN-06 | USD | 842.40 | 842.40 | 842.40 |
| 00000000002148 | 203895694 | TRF | 05-JUN-06 | 05-JUN-06 | USD | 960.00 | 960.00 | 960.00 |
| 00000000002178 | 203900249 | TRF | 06-JUN-06 | 06-JUN-06 | USD | 591.75 | 591.75 | 591.75 |
| 00000000002199 | 203901257 | TRF | 07-JUN-06 | 07-JUN-06 | USD | 689.85 | 689.85 | 689.85 |
| 00000000002192 | 203901918 | TRF | 08-JUN-06 | 08-JUN-06 | USD | 892.50 | 892.50 | 892.50 |
| 00000000002209 | 203906983 | TRF | 12-JUN-06 | 12-JUN-06 | USD | 1,674.00 | 1,674.00 | 1,674.00 |
| 00000000002141 | 203913829 | TRF | 14-JUN-06 | 14-JUN-06 | USD | 959.88 | 959.88 | 959.88 |
| 00000000002210 | 203917454 | TRF | 16-JUN-06 | 16-JUN-06 | USD | 1,620.00 | 1,620.00 | 1,620.00 |
| 00000000002193 | 203917482 | TRF | 16-JUN-06 | 16-JUN-06 | USD | 1,294.20 | 1,294.20 | 1,294.20 |
| 00000000002181 | 203917589 | TRF | 16-JUN-06 | 16-JUN-06 | USD | 693.00 | 693.00 | 693.00 |
| 00000000002168 | 203920736 | TRF | 18-JUN-06 | 18-JUN-06 | USD | 873.00 | 873.00 | 873.00 |
| 00000000002190 | 203923540 | TRF | 20-JUN-06 | 20-JUN-06 | USD | 2,250.00 | 2,250.00 | 2,250.00 |
| 00000000002169 | 203925877 | TRF | 20-JUN-06 | 20-JUN-06 | USD | 930.00 | 930.00 | 930.00 |
| 00000000002143 | 203932132 | TRF | 23-JUN-06 | 23-JUN-06 | USD | 420.00 | 420.00 | 420.00 |
| 00000000002222 | 203935101 | TRF | 23-JUN-06 | 23-JUN-06 | USD | 2,700.00 | 2,700.00 | 2,700.00 |

Cerdant Financial
Order By: Customer
Account Status:

Custom Account Status Report

Report Date: 06-NOV-2006 12:04
Page: 6 of 12

| Billing Number | Invoice Number | Type | Invoice Date | Due Date | Currency | Original Amount | Functional Amount | Balance Due |
|---|---|---|---|---|---|---|---|---|
| 00000000002201 | 203936133 | TRF | 26-JUN-06 | 26-JUN-06 | USD | 483.60 | 483.60 | 483.60 |
| 00000000002159 | 203936910 | TRF | 27-JUN-06 | 27-JUN-06 | USD | 454.50 | 454.50 | 454.50 |
| 00000000002202 | 203943522 | TRF | 28-JUN-06 | 28-JUN-06 | USD | 607.50 | 607.50 | 607.50 |
| 00000000002140 | 203945126 | TRF | 29-JUN-06 | 29-JUN-06 | USD | 892.50 | 892.50 | 892.50 |
| 00000000002200 | 203964688 | TRF | 30-JUN-06 | 30-JUN-06 | USD | 847.50 | 847.50 | 847.50 |
| 00000000002206 | 203971514 | TRF | 07-JUL-06 | 07-JUL-06 | USD | 862.50 | 862.50 | 862.50 |
| 00000000002217 | 203971743 | TRF | 07-JUL-06 | 07-JUL-06 | USD | 458.78 | 458.78 | 458.78 |
| 00000000002219 | 203995514 | TRF | 21-JUL-06 | 21-JUL-06 | USD | 150.00 | 150.00 | 150.00 |

TRF Transaction Type Subtotal: 35,000.86

Customer Location Subtotal: 142,195.29

Collector: ZZ - C21 - T  Customer Name: Heritage Real Estate     Customer Number: C21300178     Customer Location: C21300178004

| Billing Number | Invoice Number | Type | Invoice Date | Due Date | Currency | Original Amount | Functional Amount | Balance Due |
|---|---|---|---|---|---|---|---|---|
| 00083871440? | 30002568 | DNP | 15-APR-11 | 05-MAY-11 | USD | 6,666.77 | 6,666.77 | 6,666.77 |
| 00083631443? | 30002574 | DNP | 16-APR-07 | 05-MAY-07 | USD | 22,222.25 | 22,222.25 | 22,222.25 |
| 00083641442? | 30002575 | DNP | 15-APR-08 | 05-MAY-08 | USD | 22,222.25 | 22,222.25 | 22,222.25 |
| 00083651441? | 30002576 | DNP | 15-APR-09 | 05-MAY-09 | USD | 22,222.25 | 22,222.25 | 22,222.25 |
| 00083661441? | 30002577 | DNP | 15-APR-10 | 05-MAY-10 | USD | 22,222.25 | 22,222.25 | 22,222.25 |
| 00083671440? | 30002578 | DNP | 15-APR-11 | 05-MAY-11 | USD | 22,222.28 | 22,222.28 | 22,222.28 |
| 00083681440? | 30002579 | DNP | 16-APR-07 | 05-MAY-07 | USD | 6,666.76 | 6,666.76 | 6,666.76 |
| 00083841442? | 30002580 | DNP | 15-APR-08 | 05-MAY-08 | USD | 6,666.76 | 6,666.76 | 6,666.76 |
| 00083851441? | 30002581 | DNP | 15-APR-09 | 05-MAY-09 | USD | 6,666.76 | 6,666.76 | 6,666.76 |