1  CALVIN E. DAVIS (State Bar No. 101640)
   GARY J. LORCH (State Bar No. 119989)
2  GORDON & REES LLP
   633 West Fifth Street, Suite 4900
3  Los Angeles, CA 90071
   Telephone: (213) 576-5000
4  Facsimile: (213) 680-4470
   Email: cdavis@gordonrees.com
5  Email: glorch@gordonrees.com

6  Attorneys for Plaintiff
   CENTURY 21 REAL ESTATE LLC

7

8                UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA – OAKLAND BRANCH

10

11 CENTURY 21 REAL ESTATE LLC, a          )  Case No. C 06-7809 WDB
   Delaware limited liability company,    )
12 formerly known as CENTURY 21 REAL     )  **DECLARATION OF DEBBIE**
   ESTATE CORPORATION, a Delaware        )  **IULIANO IN SUPPORT OF**
   corporation,                          )  **PLAINTIFF'S APPLICATION**
13                                        )  **FOR ENTRY OF JUDGMENT BY**
                                          )  **COURT AGAINST DEFENDANT**
14                Plaintiff,              )  **HERITAGE REAL ESTATE,**
                                          )  **INC.**
15          vs.                           )
                                          )  Date:  To Be Determined By Court
16 HERITAGE REAL ESTATE, INC., a          )  Time:  To Be Determined By Court
   California corporation doing business as )  Crtm:  To Be Determined By Court
17 CENTURY 21 HERITAGE REAL              )
   ESTATE and HERITAGE REAL             )
18 ESTATE; JOHN W. SCHLENDORF,           )
   JR., an individual; SUSANNA           )
19 SCHLENDORF, an individual; and        )
   SERETA CHURCHILL, an individual,      )
20                                        )
                  Defendants.             )
21                                        )
                                          )

22        I, Debbie Iuliano, declare as follows:

23        1.    I am, and since April 2004 have been, Vice President Real Estate

24 Financial Services for Realogy Corporation ("Realogy"). Realogy is the parent

25 corporation of Century 21 Real Estate LLC ("Century 21"), the Plaintiff in this

26 action. In my capacity as Vice President Real Estate Financial Services, I am also

27 a Custodian of Records for documents generated and maintained by Century 21 in

28 connection with franchise agreements entered into by and between Century 21 and

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION**
**CASE NO. C 06-7809 WDB**

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

1    its franchisees, including Heritage Real Estate, inc. ("Heritage"), one of the

2    defendants in this action.  As to those documents, I am aware of the methods of

3    preparation of those documents, and the source of information contained therein.  I

4    have personal knowledge of the facts set forth herein, and am authorized to make

5    this Declaration on behalf of Century 21.  If called upon as a witness, I could and

6    would testify competently under oath as to all such matters.

7    2.    In my capacity as Vice-President Real Estate Financial Services, I

8    have responsibility for the oversight of amounts due to Century 21 from its

9    franchisees (*i.e.*, accounts receivable) and for collecting same.  I am required to be

10   familiar, and I am familiar with, the basic terms of the franchise agreements

11   entered into by and between Century 21 and its franchisees, including Heritage.  I

12   am also required to be familiar with, and am familiar with, the types of charges

13   made by Century 21 to its franchisees including, for example, royalty fees, national

14   advertising fund fees, and audit fees.  It is also part of my job responsibilities to be

15   familiar with the methods for determining the amounts due Century 21 from its

16   franchisees, and I am in fact familiar with those methods.

17   3.    Century 21 is a real estate agent franchise company now owned by

18   Realogy Corporation (formerly Cendant).  Century 21 was formerly known as

19   Century 21 Real Estate Corporation.

20   4.    Defendant Heritage is a corporation.  Attached hereto as Exhibit "A"

21   is a true and correct copy of a printout from the California Secretary of State

22   showing Heritage's corporate status.

23   5.    Heritage has registered to do business under the fictitious names

24   "Century 21 Heritage Real Estate" and "Heritage Real Estate."  Attached hereto

25   collectively as Exhibit "B" are true and correct copies of fictitious business name

26   records obtained through Westlaw.

27   / / /

28   / / /

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

-2-

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION**
**CASE NO.  C 06-7809 WDB**

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

## FIRST FRANCHISE AGREEMENT

6.     In or about September 2000, Century 21 and Heritage entered into a "Century 21® Real Estate Franchise Agreement" (hereinafter referred to as the "First Franchise Agreement").   A true and correct copy of the First Franchise Agreement is attached hereto as Exhibit "C."

7.     As set forth in Section 2 of the First Franchise Agreement, the commencement date of the First Franchise was September 1, 2000.

8.     As set forth in Section 5 of the First Franchise Agreement, the Franchise subject of the First Franchise Agreement was located at 3249 Mt. Diablo Boulevard, Suite 101, Lafayette, CA 94549.

9.     Pursuant to the First Franchise Agreement, Heritage was granted a non-exclusive right to use the CENTURY 21 System and certain CENTURY 21 trademarks and marketing system in connection with Heritage's real estate brokerage office.  In return, Heritage agreed, among other things, to:

a.     Continuously operate the Franchise and not to abandon it;

b.     Pay a "royalty fee" equal to six percent (6%) of the gross revenue earned, derived, and/or received by Heritage and its affiliates from certain transactions, as set forth in Section 8A of the First Franchise Agreement, with a minimum royalty fee of Five Hundred Dollars ($500) each month, as set forth in Section 8C of the First Franchise Agreement;

c.     Pay into the National Advertising Fund ("NAF") an amount equal to two percent (2%) of Heritage's gross revenues, advertising expenses, as set forth in Section 9A of the First Franchise Agreement; and

/ / /
/ / /
/ / /
/ / /
/ / /

-3-

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION
CASE NO.  C 06-7809 WDB**

1

d.    Permit Century 21 to conduct an audit of Heritage's books, tax returns and records, and to pay, with interest, any sums found due but not previously paid as royalty fees or NAF fees, together with the audit fees and any expenses, including attorney's fees, incurred by Century 21 in collecting the past due royalty and NAF fees, as set forth in Section 11C(iv) of the First Franchise Agreement.

10.    In order to assist Heritage with the establishment and continued operation of its real estate brokerage office to operate under the First Franchise Agreement, Century 21 agreed to lend to Heritage the total sum of five hundred forty seven thousand dollars ($547,000). To confirm those loans, and its obligation to repay same, Heritage executed and delivered a series of Promissory Notes. More specifically, on or about September 1, 2000, Heritage executed a delivered a "Development Advance Promissory Note," reflecting a loan in the principal amount of $402,500. A true and correct copy of that "Development Advance Promissory Note" is attached hereto as Exhibit "D." On or about February 8, 2002, Heritage executed a delivered a "Development Advance Promissory Note," reflecting a loan in the principal amount of $20,000. A true and correct copy of that "Development Advance Promissory Note" is attached hereto as Exhibit "E." On or about October 25, 2002, Heritage executed a delivered a "Development Advance Promissory Note," reflecting a loan in the principal amount of $24,500. A true and correct copy of that "Development Advance Promissory Note" is attached hereto as Exhibit "F." Finally, on or about January 1, 2005, Heritage executed a delivered an "Expansion Promissory Note," reflecting a loan in the principal amount of $100,000. A true and correct copy of that "Expansion Promissory Note" is attached hereto as Exhibit "G."

11.    Each of the Development Advance Promissory Notes referenced above required Heritage to re-pay one-ninth (1/9) of its principal each year if certain targets for gross revenues, as defined in the Notes, were not met.

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION CASE NO. C 06-7809 WDB**

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

12.    The Expansion Promissory Note provides for repayment in three installments of $37,077.42, payable June 30, 2006, September 30, 2006, and December 31, 2006.

13.    Both the Development Advance Promissory Notes and the Expansion Promissory Note provide that the entire balance can be declared due if Heritage suspends its business or upon the breach or default by Heritage of its obligations under any other agreement between Century 21 and Heritage, including but not limited to the Franchise Agreement.

14.    As security for the First Franchise Agreement and for the Notes, Heritage entered into Security Agreements for the franchise location, pursuant to which it pledged as collateral all of the furniture, furnishings, equipment, real estate listings and listing agreements, and all related rights, including the proceeds and products therefrom, related to the real estate brokerage business.  True and correct copies of those Security Agreements are attached hereto as Exhibit "H."

15.    At some time after entering into the First Franchise Agreement and Notes, Heritage abandoned and/or ceased operating its franchise.  Century 21 determined that Heritage had removed the Century 21 trademarks from the business and was no longer operating at the location set forth in the First Franchise Agreement.  In addition, Heritage has failed to respond to communications sent to it by Century 21.

16.    On or about August 16, 2006, Century 21 informed Heritage in writing that its abandonment of the business constituted a material breach of the various Agreements it had entered into with Century 21, and that due to its breach, Century 21 was terminating the Agreements effective as of August 30, 2006.  Heritage was also told that it was in default of its payment obligations.  A true and correct electronic copy of Century 21's letter is attached as Exhibit "I."

17.    Heritage has failed to make the payments due to Century 21 of the royalty fees, NAF fees, and related charges due under the First Franchise

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION
CASE NO.  C 06-7809 WDB**

Agreement.  Heritage also has failed to make the payments due to Century 21 under the Development Advance Promissory Notes and the Expansion Promissory Note.  In my capacity as Vice President Real Estate Financial Services, I personally have reviewed the records created and maintained by Century 21 with respect to the monies due from Heritage under the First Franchise Agreement, the Development Advance Promissory Notes and the Expansion Promissory Note. The total principal amount due and owing is $353,973.53, exclusive of pre-judgment interest which has accrued on the outstanding principal balance to date and exclusive of the attorney's fees and costs incurred and to be incurred in the future by Century 21 in connection with its efforts to collect this amount.  The outstanding principal balance due is broken down as follows:

| | | |
|---|---|---|
| a. | Royalty Fees | $26,360.55 |
| b. | NAF Fees | $7,104.00 |
| c. | Minimum Royalty Fee | $500.00 |
| d. | Development Notes Principal | $208,766.42 |
| e. | Expansion Note Principal | $111,242.56 |

Attached hereto as Exhibit "J" is a true and correct copy of a Balance Request and accompanying Account Summary which, with one qualification, sets forth each of the transactions comprising the total principal amount due.  The qualification is that the "DNP Transactions" column, which is intended to set forth transactions related to the Development Advance Promissory Notes, includes the amount of $71,111 more properly allocated to the Development Advance Promissory Note entered into which respect to the Second Franchise Agreement, as discussed below in Paragraphs 23-25 and 29. In this Declaration, I have "backed out" that $71,111, as it is now included in the total principal amounts due in connection with the Second Franchise Agreement. Please see Paragraph 29. The Balance Request and accompanying Account Summary was prepared at my direction, and under my supervision.  I personally have reviewed the Balance Request and accompanying

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

-6-

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION**
**CASE NO.  C 06-7809 WDB**

1 Account Summary for accuracy and, with the qualification set forth above, can and
2 hereby do confirm its accuracy.

3       18.    In addition, pursuant to the terms of the First Franchise Agreement, in
4 the event of a termination of the Agreement due to the material breach by Heritage,
5 Century 21 is entitled to recover liquidated damages calculated as follows based on
6 a formula as set forth in the First Franchise Agreement at Section 19A:    the
7 combined monthly average of all fees under the Agreement from inception to
8 termination multiplied by the number of months (or partial months) remaining in
9 the term of the Agreement, the present value of these amounts discounted at a rate
10 of eight percent (8%).  Pursuant to this calculation Heritage owes Century 21 the
11 sum of $1,294,043.54 under the referenced provision as liquidated damages in the
12 First Franchise Agreement.

## SECOND FRANCHISE AGREEMENT

14       19.    In or about September 2000, Century 21 and Heritage entered into a
15 "Century 21® Real Estate Franchise Agreement" (hereinafter referred to as the
16 "Second Franchise Agreement").  A true and correct copy of the Second Franchise
17 Agreement is attached hereto as Exhibit "K."

18       20.    As set forth in Section 2 of the Second Franchise Agreement, the
19 commencement date of the Second Franchise was September 1, 2000.

20       21.    As set forth in Section 5 of the Second Franchise Agreement, the
21 Franchise subject of the Second Franchise Agreement was located at 185 Railroad
22 Avenue, Danville CA 94526.

23       22.    Pursuant to the Second Franchise Agreement, Heritage was granted a
24 non-exclusive right to use the CENTURY 21 System and certain CENTURY 21
25 trademarks and marketing system in connection with Heritage's real estate
26 brokerage office.  In return, Heritage agreed, among other things, to:

27             a.    Continuously operate the Franchise and not to abandon it;

28             b.    Pay a "royalty fee" equal to six percent (6%) of the gross

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION
CASE NO.  C 06-7809 WDB**

revenue earned, derived, and/or received by Heritage and its affiliates from certain transactions, as set forth in Section 8A of the Second Franchise Agreement, with a minimum royalty fee of Five Hundred Dollars ($500) each month, as set forth in Section 8C of the Second Franchise Agreement;

        c.    Pay into the National Advertising Fund ("NAF") an amount equal to two percent (2%) of Heritage's gross revenues, advertising expenses, as set forth in Section 9A of the Second Franchise Agreement; and

        d.    Permit Century 21 to conduct an audit of Heritage's books, tax returns and records, and to pay, with interest, any sums found due but not previously paid as royalty fees or NAF fees, together with the audit fees and any expenses, including attorney's fees, incurred by Century 21 in collecting the past due royalty and NAF fees, as set forth in Section 11C(iv) of the Second Franchise Agreement.

23.    In order to assist Heritage with the establishment of its real estate brokerage office under the Second Franchise Agreement, Century 21 agreed to lend to Heritage the sum of one hundred sixty thousand dollars ($160,000). To confirm that loan, and its obligation to repay same, Heritage executed and delivered a "Development Advance Promissory Note," dated December 11, 2000. A true and correct copy of that "Development Advance Promissory Note" is attached hereto as Exhibit "L."

24.    The Development Advance Promissory Note required Heritage to re-pay one-ninth (1/9) of its principal each year if certain targets for gross revenues, as defined in the Note, were not met.

25.    The Development Advance Promissory Note also provides that the entire balance can be declared due if Heritage suspends its business or upon the breach or default by Heritage of its obligations under any other agreement between Century 21 and Heritage, including but not limited to the Franchise Agreement.

/ / /

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION
CASE NO. C 06-7809 WDB**

1    26.    As security for the Second Franchise Agreement and for the Note,

2  Heritage entered into a Security Agreement for the franchise location, pursuant to

3  which it pledged as collateral all of the furniture, furnishings, equipment, real

4  estate listings and listing agreements, and all related rights, including the proceeds

5  and products therefrom, related to the real estate brokerage business. A true and

6  correct copy of the Security Agreement is attached hereto as Exhibit "M."

7    27.    At some time after entering into the Second Franchise Agreement and

8  Note, Heritage abandoned and/or ceased operating its franchise. Century 21

9  determined that Heritage had removed the Century 21 trademarks from the

10  business and was no longer operating at the location set forth in the Second

11  Franchise Agreement.    In addition, Heritage has failed to respond to

12  communications sent to it by Century 21.

13    28.    On or about August 16, 2006, Century 21 informed Heritage in

14  writing that its abandonment of the business constituted a material breach of the

15  various Agreements it had entered into with Century 21, and that due to its breach,

16  Century 21 was terminating the Agreements effective as of August 30, 2006.

17  Heritage were also told that it was in default of its payment obligations. A true and

18  correct electronic copy of Century 21's letter is attached as Exhibit "N."

19    29.    Heritage has failed to make the payments due to Century 21 of the

20  royalty fees, NAF fees, and related charges due under the Second Franchise

21  Agreement. Heritage also has failed to make the payments due to Century 21

22  under the Development Advance Promissory Note. In my capacity as Vice

23  President Real Estate Financial Services, I personally have reviewed the records

24  created and maintained by Century 21 with respect to the monies due from

25  Heritage under the Second Franchise Agreement and the Development Advance

26  Promissory Note. The total principal amount due and owing is $113,216.29,

27  exclusive of pre-judgment interest which has accrued on the outstanding principal

28  balance to date and exclusive of the attorney's fees and costs incurred and to be

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

-9-

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION**
**CASE NO.  C 06-7809 WDB**

1   incurred in the future by Century 21 in connection with its efforts to collect this

2   amount.  The outstanding principal balance due is broken down as follows:

3           a.      Royalty Fees                          $35,000.86

4           b.      NAF Fees                              $7,104.43

5           c.      Development Note Principal    $71,111.00

6   Attached hereto as Exhibit "O" is a true and correct copy of a Balance Request and

7   accompanying Account Summary which, with one qualification, sets forth each of

8   the transactions comprising the total principal amount due.  The one qualification

9   is that this Balance Request and accompanying Account Summary does not include

10  the amounts due for the Development Advance Promissory Note.  As discussed

11  above in Paragraph 17, the principal amount due for the Development Advance

12  Promissory Note is shown in the Balance Request and accompanying Account

13  Summary prepared for the First Franchise.      The Balance Request and

14  accompanying Account Summary attached hereto was prepared at my direction,

15  and under my supervision.  I personally have reviewed the Balance Request and

16  accompanying Account Summary for accuracy and, with the one qualification

17  noted above, can and hereby do confirm its accuracy.

18          30.     In addition, pursuant to the terms of the Second Franchise Agreement,

19  in the event of a termination of the Agreement due to the material breach by

20  Heritage, Century 21 is entitled to recover liquidated damages calculated as

21  follows based on a formula as set forth in the Second Franchise Agreement at

22  Section 19A:  the combined monthly average of all fees under the Agreement from

23  inception to termination multiplied by the number of months (or partial months)

24  remaining in the term of the Agreement, the present value of these amounts

25  discounted at a rate of eight percent (8%).  Pursuant to this calculation, and as of

26  November 6, 2006, Heritage owes Century 21 the sum of $1,841,533.58 under the

27  referenced provision for liquidated damages in the Second Franchise Agreement.

28  / / /

*Gordon & Rees LLP*
*633 West Fifth Street*
*Suite 4900*
*Los Angeles, CA  90071*

-10-

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION**
**CASE NO.  C 06-7809 WDB**

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

## THIRD FRANCHISE AGREEMENT

31.   In or about April 2001, Century 21 and Heritage entered into a "Century 21® Real Estate Franchise Agreement" (hereinafter referred to as the "Third Franchise Agreement").   A true and correct copy of the Third Franchise Agreement is attached hereto as Exhibit "P."

32.   As set forth in Section 2 of the Third Franchise Agreement, the commencement date of the Third Franchise was April 1, 2001.

33.   As set forth in Section 5 of the Third Franchise Agreement, the Franchise subject of the Third Franchise Agreement was located at 6211 LaSalle, Oakland, CA 94611.

34.   Pursuant to the Third Franchise Agreement, Heritage was granted a non-exclusive right to use the CENTURY 21 System and certain CENTURY 21 trademarks and marketing system in connection with Heritage's real estate brokerage office.   In return, Heritage agreed, among other things, to:

a.   Continuously operate the Franchise and not to abandon it;

b.   Pay a "royalty fee" equal to six percent (6%) of the gross revenue earned, derived, and/or received by Heritage and its affiliates from certain transactions, as set forth in Section 8A of the Third Franchise Agreement, with a minimum royalty fee of Five Hundred Dollars ($500) each month, as set forth in Section 8C of the Third Franchise Agreement;

c.   Pay into the National Advertising Fund ("NAF") an amount equal to two percent (2%) of Heritage's gross revenues, advertising expenses, as set forth in Section 9A of the Third Franchise Agreement; and

d.   Permit Century 21 to conduct an audit of Heritage's books, tax returns and records, and to pay, with interest, any sums found due but not previously paid as royalty fees or NAF fees, together with the audit fees and any expenses, including attorney's fees, incurred by Century 21 in collecting the past due royalty and NAF fees, as set forth in Section 11C(iv) of the Third Franchise

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION
CASE NO.  C 06-7809 WDB**

1   Agreement.

2       35.    In order to assist Heritage with the establishment and continued

3   operation of its real estate brokerage office under the Third Franchise Agreement,

4   Century 21 agreed to lend to Heritage the total sum of two hundred sixty thousand

5   dollars ($260,000).    To confirm those loans, and its obligation to repay same,

6   Heritage executed and delivered a series of Promissory Notes.    More specifically,

7   on or about March 30, 2001, Heritage executed a delivered a "Development

8   Advance Promissory Note," reflecting a loan in the principal amount of $200,000.

9   A true and correct copy of that "Development Advance Promissory Note" is

10  attached hereto as Exhibit "Q."  On or about August 6, 2002, Heritage executed a

11  delivered a "Development Advance Promissory Note," reflecting a loan in the

12  principal amount of $60,000.    A true and correct copy of that "Development

13  Advance Promissory Note" is attached hereto as Exhibit "R."

14      36.    Both of the Development Advance Promissory Notes referenced in

15  the preceding paragraph required Heritage to re-pay one-ninth (1/9) of the principal

16  each year if certain targets for gross revenues, as defined in the Notes, were not

17  met.

18      37.    The Development Advance Promissory Notes also provide that the

19  entire balance can be declared due if Heritage suspends its business or upon the

20  breach or default by Heritage of its obligations under any other agreement between

21  Century 21 and Heritage, including but not limited to the Franchise Agreement.

22      38.    As security for the Third Franchise Agreement and for the Notes,

23  Heritage entered into a Security Agreement for the franchise location, pursuant to

24  which it pledged as collateral all of the furniture, furnishings, equipment, real

25  estate listings and listing agreements, and all related rights, including the proceeds

26  and products therefrom, related to the real estate brokerage business.  A true and

27  correct copy of the Security Agreement is attached hereto as Exhibit "S."

28  / / /

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

-12-

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION
CASE NO.  C 06-7809 WDB**

39.    At some time after entering into the Third Franchise Agreement and Notes, Heritage abandoned and/or ceased operating its franchise.  Century 21 determined that Heritage had removed the Century 21 trademarks from the business and was no longer operating at the location set forth in the Third Franchise Agreement.    In addition, Heritage has failed to respond to communications sent to it by Century 21.

40.    On or about August 16, 2006, Century 21 informed Heritage in writing that its abandonment of the business constituted a material breach of the various Agreements it had entered into with Century 21, and that due to its breach, Century 21 was terminating the Agreements effective as of August 30, 2006. Heritage were also told that it was in default of its payment obligations.  A true and correct electronic copy of Century 21's letter is attached as Exhibit "T."

41.    Heritage has failed to make the payments due to Century 21 of the royalty fees, NAF fees, and related charges due under the Third Franchise Agreement and Third Guaranty.  Heritage also has failed to make the payments due to Century 21 under the Development Advance Promissory Notes.  In my capacity as Vice President Real Estate Financial Services, I personally have reviewed the records created and maintained by Century 21 with respect to the monies due from Heritage under the Third Franchise Agreement and the Development Advance Promissory Notes.  The total principal amount due and owing is $179,134.84, exclusive of pre-judgment interest which has accrued on the outstanding principal balance to date and exclusive of the attorney's fees and costs incurred and to be incurred in the future by Century 21 in connection with its efforts to collect this amount.  The outstanding principal balance due is broken down as follows:

|   |   |   |
|---|---|---|
| a. | Royalty Fees | $27,333.59 |
| b. | NAF Fees | $7,356.16 |
| c. | Development Notes Principal | $144,445.09 |

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION
CASE NO.  C 06-7809 WDB**

1   Attached hereto as Exhibit "U" is a true and correct copy of a Balance Request and
2   accompanying Account Summary which sets forth each of the transactions
3   comprising the total principal amount due.    This Balance Request and
4   accompanying Account Summary was prepared at my direction, and under my
5   supervision.  I personally have reviewed the Balance Request and accompanying
6   Account Summary for accuracy, and can and hereby do confirm its accuracy.

7         42.    In addition, pursuant to the terms of the Third Franchise Agreement,
8   in the event of a termination of the Agreement due to the material breach by
9   Heritage, Century 21 is entitled to recover liquidated damages calculated as
10  follows based on a formula as set forth in the Third Franchise Agreement at
11  Section 19A:  the combined monthly average of all fees under the Agreement from
12  inception to termination multiplied by the number of months (or partial months)
13  remaining in the term of the Agreement, the present value of these amounts
14  discounted at a rate of eight percent (8%).  Pursuant to this calculation, Heritage
15  owes Century 21 the sum of $1,746,656.25 under the referenced provision for
16  liquidated damages in the Third Franchise Agreement.

17               **FOURTH FRANCHISE AGREEMENT**

18        43.    In or about July 2001, Century 21 and Heritage entered into a
19  "Century 21® Real Estate Franchise Agreement" (hereinafter referred to as the
20  "Fourth Franchise Agreement").  A true and correct copy of the Fourth Franchise
21  Agreement is attached hereto as Exhibit "V."

22        44.    As set forth in Section 2 of the Fourth Franchise Agreement, the
23  commencement date of the Fourth Franchise was July 1, 2001.

24        45.    As set forth in Section 5 of the Fourth Franchise Agreement, the
25  Franchise subject of the Fourth Franchise Agreement was located at 1983 Second
26  Street, Livermore CA 94550.

27  / / /

28  / / /

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

-14-

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION**
**CASE NO.  C 06-7809 WDB**

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

46.    Pursuant to the Fourth Franchise Agreement, Heritage was granted a non-exclusive right to use the CENTURY 21 System and certain CENTURY 21 trademarks and marketing system in connection with Heritage's real estate brokerage office.  In return, Heritage agreed, among other things, to:

      a.    Continuously operate the Franchise and not to abandon it;

      b.    Pay a "royalty fee" equal to six percent (6%) of the gross revenue earned, derived, and/or received by Heritage and its affiliates from certain transactions, as set forth in Section 8A of the Fourth Franchise Agreement, with a minimum royalty fee of Five Hundred Dollars ($500) each month, as set forth in Section 8C of the Fourth Franchise Agreement;

      c.    Pay into the National Advertising Fund ("NAF") an amount equal to two percent (2%) of Heritage's gross revenues, advertising expenses, as set forth in Section 9A of the Fourth Franchise Agreement; and

      d.    Permit Century 21 to conduct an audit of Heritage's books, tax returns and records, and to pay, with interest, any sums found due but not previously paid as royalty fees or NAF fees, together with the audit fees and any expenses, including attorney's fees, incurred by Century 21 in collecting the past due royalty and NAF fees, as set forth in Section 11C(iv) of the Fourth Franchise Agreement.

47.    In order to assist Heritage with the establishment of its real estate brokerage office under the Fourth Franchise Agreement, Century 21 agreed to lend to Heritage the sum of eighty five thousand dollars ($85,000).  To confirm that loan, and its obligation to repay same, Heritage executed and delivered a "Development Advance Promissory Note," dated July 9, 2001.  A true and correct copy of that "Development Advance Promissory Note" is attached hereto as Exhibit "W."

/ / /

/ / /

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION
CASE NO.  C 06-7809 WDB**

1    48.    The Development Advance Promissory Note required Heritage to re-
2    pay one-ninth (1/9) of its principal each year if certain targets for gross revenues,
3    as defined in the Note, were not met.

4    49.    The Development Advance Promissory Note also provides that the
5    entire balance can be declared due if Heritage suspends its business or upon the
6    breach or default by Heritage of its obligations under any other agreement between
7    Century 21 and Heritage, including but not limited to the Franchise Agreement.

8    50.    As security for the Fourth Franchise Agreement and for the Note,
9    Heritage entered into a Security Agreement for the franchise location, pursuant to
10   which it pledged as collateral all of the furniture, furnishings, equipment, real
11   estate listings and listing agreements, and all related rights, including the proceeds
12   and products therefrom, related to the real estate brokerage business. A true and
13   correct copy of the Security Agreement is attached hereto as Exhibit "X."

14   51.    At some time after entering into the Fourth Franchise Agreement and
15   Note, Heritage abandoned and/or ceased operating its franchise. Century 21
16   determined that Heritage had removed the Century 21 trademarks from the
17   business and was no longer operating at the location set forth in the Fourth
18   Franchise Agreement. In addition, Heritage has failed to respond to
19   communications sent to it by Century 21.

20   52.    On or about August 16, 2006, Century 21 informed Heritage in
21   writing that its abandonment of the business constituted a material breach of the
22   various Agreements it had entered into with Century 21, and that due to its breach,
23   Century 21 was terminating the Agreements effective as of August 30, 2006.
24   Heritage were also told that it was in default of its payment obligations. A true and
25   correct electronic copy of Century 21's letter is attached as Exhibit "Y."

26   53.    Heritage has failed to make the payments due to Century 21 of the
27   royalty fees, NAF fees, and related charges due under the Fourth Franchise
28   Agreement. Heritage also has failed to make the payments due to Century 21

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

-16-

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

1  under the Development Advance Promissory Note.  In my capacity as Vice

2  President Real Estate Financial Services, I personally have reviewed the records

3  created and maintained by Century 21 with respect to the monies due from

4  Heritage under the Fourth Franchise Agreement and the Development Advance

5  Promissory Note.  The total principal amount due and owing is $100,007.14,

6  exclusive of pre-judgment interest which has accrued on the outstanding principal

7  balance to date and exclusive of the attorney's fees and costs incurred and to be

8  incurred in the future by Century 21 in connection with its efforts to collect this

9  amount.  The outstanding principal balance due is broken down as follows:

10         a.    Royalty Fees              $44,985.32

11         b.    NAF Fees                  $7,800.00

12         c.    Development Note Principal    $47,221.82

13  Attached hereto as Exhibit "Z" is a true and correct copy of a Balance Request and

14  accompanying Account Summary which sets forth each of the transactions

15  comprising the total principal amount due.    This Balance Request and

16  accompanying Account Summary was prepared at my direction, and under my

17  supervision.  I personally have reviewed the Balance Request and accompanying

18  Account Summary for accuracy, and can and hereby do confirm its accuracy.

19         54.    In addition, pursuant to the terms of the Fourth Franchise Agreement,

20  in the event of a termination of the Agreement due to the material breach by

21  Heritage, Century 21 is entitled to recover liquidated damages calculated as

22  follows based on a formula as set forth in the Fourth Franchise Agreement at

23  Section 19A: the combined monthly average of all fees under the Agreement from

24  inception to termination multiplied by the number of months (or partial months)

25  remaining in the term of the Agreement, the present value of these amounts

26  discounted at a rate of eight percent (8%).  Pursuant to this calculation, Heritage

27  owes Century 21 the sum of $1,370,261.63 under the referenced provision for

28  liquidated damages in the Fourth Franchise Agreement.

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION
CASE NO.  C 06-7809 WDB**

55.    In summary, the total principal amount owed to Century 21 by Heritage in this action is as follows:

| | |
|---|---|
| First Franchise Agreement, Guaranty and Notes | $1,648,017.07 |
| Second Franchise Agreement, Guaranty and Note | $1,954,749.87 |
| Third Franchise Agreement, Guaranty and Notes | $1,925,791.09 |
| Fourth Franchise Agreement, Guaranty and Note | $1,470,268.77 |
| **TOTAL** | **$6,998,826.80** |

Executed this 5 day of APRIL 2007, at Parsippany, New Jersey.

I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct.

_____
DEBBIE IULIANO

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

**DECLARATION OF DEBBIE IULIANO IN SUPPORT OF APPLICATION
CASE NO.  C 06-7809 WDB**

RLGY/1041334/108842v.1