# EXHIBIT W

COPY

Office No. 300178-0005

## DEVELOPMENT ADVANCE PROMISSORY NOTE

$85,000                                        Parsippany, New Jersey
                                               Dated: July 9, 2001

    FOR GOOD AND VALUABLE CONSIDERATION, the undersigned **Heritage Real Estate, Inc.**, a California Corporation ("Maker") promises to pay to CENTURY 21 REAL ESTATE CORPORATION or its successors or assigns ("Holder"), or order, on the date eight years from the first Determination Date (as defined below), at 6 Sylvan Way, Parsippany, New Jersey, or at such other place as Holder may from time to time designate, in writing, the principal sum of **Eighty Five Thousand and 00/100 Dollars ($85,000)** (the "Principal") which amount shall, except as set forth below, bear no interest.

    If (a) Maker is not in default (a default being present only after notice and the expiration of any "cure" period and in the absence of an event of force majeure) with respect to its obligations under any franchise agreements with Holder, as each may be amended (the "Franchise Agreements") (including payment of royalty fees, service fees and NAF contributions thereunder) and (b) the real estate brokerage office locations operated by Maker as a CENTURY 21 Firm have Gross Revenues (as such term is defined in the Franchise Agreement) on which royalties are payable under the Franchise Agreements, over the first full calendar year (i.e. Calendar Year 2002) beginning on or after the Commencement (as defined in the Franchise Agreement in conjunction with which this Note was executed in connection with) of at least fourteen million three hundred two thousand six hundred forty seven dollars ($14,302,647), and over each full calendar year thereafter (each such calendar year ending on a "Determination Date") has Gross Revenues (as defined above) which average (calculated by adding the Gross Revenues for the current and all prior full calendar years and dividing said sum by the number of such calendar years) at least least fourteen million three hundred two thousand six hundred forty seven dollars ($14,302,647) per year, then on each such Determination Date, one-ninth of the Principal (the "Yearly Principal") shall be forgiven. On each such Determination Date, to the extent no Principal has been forgiven on such date, an amount of Principal equal to the Yearly Principal shall become due and payable within thirty (30) days of the demand therefor. The last Determination Date shall be the date eight years from the first Determination Date. In the event Maker fails to make any payment when due, including any payment due upon acceleration of this Note, the entire outstanding Principal shall thereafter bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or the highest rate allowed by law from its due date until paid in full.

    Notwithstanding the foregoing installment payments, Maker acknowledges and agrees that Holder, at its sole option and discretion, without notice, may apply to the outstanding due and payable Principal and accrued and unpaid interest amount evidenced by this Note any and all payments due to Maker from Holder under the CENTURY 21 Incentive Bonus set forth in any Franchise Agreement, if or when any such CENTURY 21 Incentive Bonus becomes due or payable to Maker. If and to the extent necessary, Maker hereby assigns, transfers and conveys to Holder all of Maker's rights, title and interest in and to the CENTURY 21 Incentive Bonus. Amounts of CENTURY 21 Incentive Bonuses applied against the Principal and interest shall correspondingly reduce amounts owed by Maker hereunder.

-1-

All payments shall be made in lawful money of the United States of America without set-off, offset, recoupment, deduction or counterclaim of any kind whatsoever. Payments, when made, shall first be applied to accrued and unpaid interest, if any, and then to Principal.

Maker may prepay this Note in whole or in part on any date without premium or penalty. No partial prepayment shall extend or postpone the due date of any subsequent installment payment or change the amount of the installment payment. Prepayments will be applied without notation on this Note.

Holder of this Note may determine that Maker is in default and may accelerate the unpaid Principal and all interest accrued thereon to become immediately due and payable, without presentment for payment or any notice or demand, (A) if Maker, endorser, surety or guarantor of this Note (i) voluntarily suspends business, (ii) becomes insolvent or offers settlement to any creditors; (iii) files a petition in bankruptcy or is the subject of an involuntary petition in bankruptcy which is not dismissed within ninety (90) days after its filing; (iv) institutes any proceeding under any bankruptcy or insolvency laws relating to the relief of Maker from its debtors, (v) makes an assignment for the benefit of creditors; or (vi) makes any material false statement or representation orally or in writing, fails to furnish contractually required information, or fails to permit contractually required inspection of any books or records on demand of Holder, (B) upon default in payment of any Principal payment due hereunder, (C) upon default, in Holder's reasonable opinion, of any other agreement or note between Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements, or (D) upon early termination of any agreement between Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements and/or upon expiration of any Franchise Agreements. For the purposes of this Note, a party shall be in default of an agreement if no event of force majeure is present and if such party shall have been given notice of such default in accordance with the terms of any such agreement, and, as to those defaults for which such party is afforded an opportunity to cure pursuant to such agreement, such party shall have failed to make such cure within the applicable period provided. Maker's obligation to pay the Principal and interest thereon, if accelerated, shall be absolute and unconditional, and shall not be subject to any rights of set-off, offset or recoupment.

Maker agrees to pay all expenditures made in any attempt to collect any amounts due pursuant to this Note. If any legal action is necessary to enforce or collect this Note, the prevailing party shall be entitled to reasonable attorney's fees (including in-house attorneys) and court costs and all costs of collection in addition to any other relief to which that party may be entitled.

Maker and all endorsers or guarantors of this Note, and each of them, hereby waive, to the fullest extent permitted by law, diligence, demand, notice of demand, presentment for payment, notice of non-payment, notice of dishonor, protest and notice of protest and specifically consent to and waive notice of any renewals, extensions, amendments or modifications of this Note, whether made to or in favor of Maker or any other person or persons. Holder reserves the right to modify the terms of this Note, grant extensions, notations, renewals, releases, discharges, compositions and compromises with any party liable under this Note, with or without any notice to or the consent of, and without discharging or affecting the obligations of, any other party liable under this Note. The claiming of any statute of limitations as a defense to any demand against Maker or any endorser or guarantor is expressly waived by each and all of said parties.

If this Note is being executed in connection with the acquisition or consolidation (by

-2-

merger, acquisition or otherwise) of a real estate brokerage business from another person or entity, Maker acknowledges and agrees that while Holder and its representatives may have participated in the negotiation of the terms and conditions of, or in other aspects of, such acquisition and assisted with the preparation of documents (legal or otherwise) which memorialize the terms and conditions of such acquisition, Holder and its representatives were acting solely in the capacity of franchisor of its franchise system and were not retained by Maker in the capacity of agent, consultant or advisor. Maker acknowledges and agrees that it has not and will not rely upon any financial advisory services, investment banking services, or any legal or accounting advice relating to the acquisition that have been provided by Holder or any of its employees, representatives, or affiliates and that neither Holder nor any of its affiliates has shall have any liability in connection therewith. Maker acknowledges and agrees that it has completed any due diligence and other investigations of the acquired office as Maker deemed appropriate. Additionally, Maker acknowledges and agrees that it has not relied on any representations made by Holder or any of its affiliates and its representatives in deciding to complete the acquisition and related transactions. Maker waives any and all claims against Holder and its officers, directors, shareholders, affiliates, employees and agents arising out of the acquisition or consolidation. In addition, Maker acknowledges and agrees that neither Holder nor any of its affiliates has made any representations or warranties, nor furnished any information to them concerning any aspect of the Franchise Agreements or Maker's business.

This Note shall be construed and enforced in accordance with the laws of the State of New Jersey. The terms of this Note are confidential and will not be disclosed to any third party by Maker without the prior written consent of Holder, except to Maker's tax advisors and commercial lenders or unless otherwise required by law.

This Note shall be the joint and several obligation of Maker, all guarantors and endorsers, if any, and shall be binding upon them and their heirs, executors, personal representatives, successors and assigns and shall inure to the benefit of Holder and its successors and assigns. This Note shall not be assignable by Maker without the prior written consent of Holder.

IN WITNESS WHEREOF, the undersigned Maker has executed this Note as of the date first set forth above.

ATTEST:

_____
(Assistant) Secretary

MAKER: Heritage Real Estate, Inc.

By: _____
Name: John W. Schlendorf, Jr.
Title: President

By: _____
Name: Susanna Schlendorf
Title: Secretary

-3-

# EXHIBIT X

## SECURITY AGREEMENT

This Security Agreement (this "Security Agreement") is made as of July 9, 2001, between Heritage Real Estate, Inc., a California corporation ("Debtor"), and Century 21 Real Estate Corporation ("Secured Party").

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Debtor hereby grants to Secured Party a security interest in all of the furniture, furnishings, equipment, real estate listings and listing agreements and related rights which are located at or related to the residential real estate brokerage business conducted by Debtor and including the proceeds and products therefrom and any and all substitutions, replacements, additions and accessions thereto and to CENTURY 21 Incentive Bonuses to which debtor may be entitled pursuant to any franchise agreement entered into with Secured Party, together with all such rights and property hereafter acquired by Debtor (collectively the "Collateral") as security for (i) the prompt payment of that certain Development Advance Promissory Note, dated the date hereof, executed by Debtor in favor of Secured Party, in the principal amount of $ 25,000 and incorporated herein by reference (the "Note"), and any renewals, compromises, extensions, modifications, accelerations or other changes in the time for performance or other terms of the Note and (ii) performance under the franchise agreement, dated as of July 1, 2001, between Debtor and Secured Party, as may be amended (the "Franchise Agreement"), and all other agreements between Debtor and Secured Party.

SECTION 1 – DEBTOR'S OBLIGATIONS. Debtor agrees to the following:

(a) Debtor will properly maintain and care for the Collateral and will not remove the Collateral from the Approved Location (as defined in the Franchise Agreement).

(b) Debtor will notify Secured Party in writing prior to any change in Debtor's place of business;

(c) Debtor has not executed and will not execute as debtor thereunder any security agreement or financing statement covering any of the Collateral except with Secured Party, nor will Debtor pledge or encumber the Collateral, or allow any lien to be placed against the Collateral, whether voluntary or involuntary;

(d) Debtor represents and warrants to Secured Party that the Collateral shall not become collateral for any other obligations previously incurred, nor collateral under any other security agreement(s) previously executed by Debtor; and

(e) Debtor will not sell, contract for sale or otherwise dispose of any of the Collateral except in the ordinary course of business.

SECTION 2 – DEFAULTS. Debtor shall be in default under this Security Agreement upon the occurrence of any of the following events or conditions (an "Event of Default"):

(a) The failure by Debtor to pay any amount when due under the terms and provisions of the Note (after applicable grace periods, if any); or

(b) Debtor's breach of any term, provision, warranty or representation set forth herein or in the Franchise Agreement, or in any other agreement between Debtor and Secured Party; or

(c) The making of any levy on, or seizure or attachment of, any of the Collateral, if such levy, seizure or attachment is not set aside within fifteen (15) days thereafter; or

(d) The dissolution, termination of existence or insolvency of Debtor; the appointment of a

JUL 10 2001 13:13 FR CENDANT                973 496 5641 TO 919259754306        P.07/14

receiver of all or any part of the property of Debtor; an assignment for the benefit of creditors by Debtor; the calling of a meeting of creditors of Debtor; or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Debtor or any guarantor, surety or endorser for Debtor; or

(e) Any guarantor, surety or endorser for Debtor defaulting in any obligation or material liability to Secured Party, if such default is not cured within five (5) days thereafter.

## SECTION 3 – REMEDIES AFTER DEFAULT.

(a) In the event of the occurrence of an Event of Default, Secured Party, in addition to all other rights and remedies given Secured Party under any and all agreements by and among Secured Party, Debtor and/or Debtor's guarantors, or otherwise by law, may do one or more of the following, without notice to or demand upon Debtor:

1) Declare all obligations secured hereby immediately due and payable;

2) Enforce the security interest given hereunder and otherwise exercise the rights of a secured creditor provided under the laws of the State of California;

3) Require Debtor to assemble the Collateral and make it available to Secured Party; and/or

4) Enter any office or offices of Debtor and take possession of the Collateral and of the records pertaining to the Collateral.

(b) Secured Party may apply the proceeds of any disposition of Collateral available for satisfaction of Debtor's indebtedness, which shall include the reasonable expenses of such sale, in any order of preference which Secured Party, in its sole discretion, chooses. Debtor shall remain liable for any deficiency.

**SECTION 4 – INSURANCE PROCEEDS.** So long as no default exists hereunder, the proceeds of fire and casualty insurance covering the Collateral may be utilized by Debtor for the repair and restoration of Debtor's facilities, subject to such procedures as Secured Party may reasonably require to assure the application of any such insurance proceeds for such purpose and completion of such repair and restoration.

**SECTION 5 – DUTIES OF SECURED PARTY.** Secured Party's duties or responsibilities with reference to the Collateral shall be limited solely to the duties and responsibilities set forth in this Security Agreement and Secured Party shall not be responsible in any way for the condition, depreciation or maintenance of the Collateral other than as set forth herein. Debtor shall pay when due all taxes, charges, liens and assessments against the Collateral.

## SECTION 6 – MISCELLANEOUS.

(a) <u>Debtor's Obligations Under Note</u>. Simultaneously with the payment in full of all of Debtor's obligations under the Note, all liens, encumbrances and security interests created by this Security Agreement shall be null and void.

(b) <u>Waiver</u>. Any waiver, express or implied, of any provision of this Security Agreement and any delay or failure by Secured Party to enforce any provision of this Security Agreement shall not preclude Secured Party from enforcing any such provision thereafter.

(c) <u>Governing Law</u>. This Security Agreement shall be governed by and construed according to the laws of the State of California.

JUL 10 2001 13:14 FR CENDANT        973 496 5641 TO 919259754306        P.08/14

(d)  **Remedies.** All rights and remedies provided herein are cumulative and not exclusive of any rights or remedies otherwise provided by law. Any single or partial exercise of any right or remedy shall not preclude the further exercise thereof or the exercise of any other right or remedy.

(e)  **Financing Statement.** Concurrently herewith, Secured Party shall file a UCC-1 Financing Statement for filing with the California Secretary of State or other appropriate governmental authority to perfect the security interest created hereby. Debtor will execute such other documents as Secured Party may reasonably require to perfect its security interest in the Collateral. Upon extinguishment of Secured Party's security interest hereunder, Secured Party will execute any forms or statements necessary to reflect that fact.

(f)  **Notices.** In the event either party desires to give notice to the other with regards to this Security Agreement, such notice shall be in writing and may be hand delivered, express mailed, or sent by certified or registered mail. Notices mailed as provided herein shall be deemed to be given two (2) days after they are sent. Such notices shall be sent to the address provided for such party in the Franchise Agreement, unless a party gives notice of a change of its respective address.

(g)  **Attorney's Fees.** In the event either party commences litigation against the other with respect to this Security Agreement, or its interpretation or enforcement, the prevailing party shall be entitled to reasonable attorney's fees and court costs.

(h)  **Successors in Interest.** This Security Agreement shall inure to the benefit of, and be binding upon, the successors in interest of the parties hereto.

(i)  **Amendments.** This Security Agreement may only be amended by a writing executed by both of the parties hereto.

(j)  **Entire Agreement.** The foregoing constitutes the entire agreement between the parties, all representations or understandings, whether oral or written, having been incorporated herein or otherwise superseded hereby.

IN WITNESS WHEREOF, the parties hereto have executed this Security Agreement effective as of the date first written above.

Heritage Real Estate, Inc.

By: _____
Name: John W. Schlendorf, Jr.
Title: President

By: _____
Name: Susanna Schlendorf
Title: Secretary/Treasurer

By: _____
Name: Sereta Churchill
Title: Vice President

CENTURY 21 REAL ESTATE CORPORATION

By: _____
John G. Kornfeind
Senior Vice President
Franchise Sales and Administration

**EXHIBIT Y**



**Real Estate LLC**
1 Campus Drive
Parsippany, New Jersey 07054
Business (973) 407-6700
Fax (973) 407-5641

August 16, 2006

VIA OVERNIGHT CARRIER AND FIRST CLASS MAIL

PERSONAL & CONFIDENTIAL
Mr. John W. Schlendorf, Jr.
Ms. Susanna Schlendorf
Ms. Sereta Churchill
CENTURY 21 Heritage Real Estate
3249 Mt. Diablo Boulevard, Suite 101
Lafayette, CA 94549

Re: Notice of Intent to Terminate of CENTURY 21® Real Estate Franchise Agreement #300178-0005 located at 1983 Second Street, Livermore, CA 94550 by and between Century 21 Real Estate LLC FKA Century 21 Real Estate Corporation (herein referred to as "Century 21") and Heritage Real Estate, Inc., a California corporation (herein referred to as "You" or "Franchisee"), commencing July 1, 2001 expiring December 31, 2014.

Dear Mr. Schlendorf, Ms. Schlendorf and Ms. Churchill:

Please be advised that this letter shall notify you of your default of the above referenced Agreement. Your unilateral abandonment of the franchise and the sale of the business to third parties without Century 21's approval are material defaults under Paragraph 17.H of the Agreement. Furthermore, the abandonment and sale of the franchise is intentional and/or gross misconduct for which Century 21 may terminate the referenced Franchise Agreement upon notice to you, and without an opportunity to cure, in accordance with paragraph 17 M (ii). Accordingly your Franchise Agreement is terminated effective August 30, 2006.

As of the date of this letter, you have also breached Paragraphs 8, 9 and 11 of the Agreement by failing to tender payment when due. Your past due account balances are as follows:

| | |
|---|---|
| National Advertising Fees Billed to Date: | $ 6,341.00 |
| Royalty Fees Billed to Date: | $ 44,985.32 |
| **TOTAL Amount Due:** | **$ 51,326.32** |
| | |
| Accelerated Development Advance Note Balance Due Upon Failure to Cure this Intent to Terminate: | $ 47,222.00 |
| **Total Amount Due Upon Termination Including the Accelerated Development Advance Promissory Note:** | **$ 98,548.32** |

*A Realogy Company*

Additionally, you are in default of Paragraph 8A of the Agreement in that, since July 26, 2006, you have failed to consistently report on closed transactions.

Please forward the required funds to the attention of Debbie Iuliano, Vice President of Financial Services at 1 Campus Drive, Parsippany, New Jersey 07054 on or before **August 29, 2006**. Century 21 may elect to forward your outstanding account balances to a collection agency or initiate legal proceedings to collect the balances due, as well as the damages Century 21 has incurred because of your failure to comply with your contractual obligations. Upon a final review, which may include a post termination audit, additional amounts may be due for National Advertising Fund (NAF) contributions and service fees, and in that event, an additional invoice will be forwarded to your attention.

For your ready reference, I have attached a copy of the procedures set forth in your Franchise Agreement, which you are required to follow after termination of the Franchise. Note that the post termination procedures include, but are not limited to, the requirement that you must <u>immediately cease the use of all Century 21 Trademarks</u>. An inspection will be conducted to confirm that you have ceased identifying yourself, as a Century 21 franchise and that you are not utilizing the Century 21 name in any respect. The de-identification procedures require you to remove all signs, cease all advertising, remove any listings in any phonebooks, and destroy all letterhead or documents referencing Century 21, among other actions. Immediate injunctive and other legal relief will be sought if you fail to stop using the Century 21 mark at once.

Very truly yours,

Rachel L. Motyl
Manager of Franchise Compliance

cc: Lynette Carhart-Gladdis, Esq.
Kim Toomey, Esq.
Dale Omer
Renee Whiteside
Debbie Iuliano
Jean Wenz
Shalina Rodriguez
Danny Smith
Mike Piccola
Jeanette Halkias
Rich DeNicola
Lisa Sanborn
Franchise Admin. File

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 000000001552 | 1850 Thicket Ln | $13,250.00 | 03-MAY-06 | 03-MAY-06 | 91 | $795.00 | $795.00 |
| 000000001541 | 2364 7th St | $13,600.00 | 04-MAY-06 | 04-MAY-06 | 90 | $816.00 | $816.00 |
| 000000001539 | 1330 Busca Dr | $6,750.00 | 08-MAY-06 | 08-MAY-06 | 86 | $405.00 | $405.00 |
| 000000001510 | 3857 McGregor | $15,625.00 | 08-MAY-06 | 08-MAY-06 | 86 | $937.50 | $937.50 |
| 000000001456 | 4560 Abruzzi Cir | $12,873.75 | 09-MAY-06 | 09-MAY-06 | 85 | $772.43 | $772.43 |
| 000000001425 | 1242 Greger St | $11,560.00 | 09-MAY-06 | 09-MAY-06 | 85 | $693.60 | $693.60 |
| 000000001551 | 6749 Tiffany Common | $16,125.00 | 12-MAY-06 | 12-MAY-06 | 82 | $967.50 | $967.50 |
| 000000001548 | 1580 Arlington Rd | $14,750.00 | 17-MAY-06 | 17-MAY-06 | 77 | $885.00 | $885.00 |
| 000000001517 | 532 Ranger St | $14,100.00 | 17-MAY-06 | 17-MAY-06 | 77 | $846.00 | $846.00 |
| 000000001537 | 513 Saddleback | $18,375.00 | 19-MAY-06 | 19-MAY-06 | 75 | $1,102.50 | $1,102.50 |
| 000000001453 | 2343 5th St | $14,175.00 | 22-MAY-06 | 22-MAY-06 | 72 | $850.50 | $850.50 |
| 000000001566 | 1946 Nushake Way | $5,630.00 | 23-MAY-06 | 23-MAY-06 | 71 | $337.80 | $337.80 |
| 000000001514 | 843 Cherokee Dr | $17,670.00 | 24-MAY-06 | 24-MAY-06 | 70 | $1,060.20 | $1,060.20 |
| 000000001513 | 447 Rockingham Way | $26,125.00 | 25-MAY-06 | 25-MAY-06 | 69 | $1,567.50 | $1,567.50 |
| 000000001574 | 1568 La Cresta | $13,781.25 | 25-MAY-06 | 25-MAY-06 | 69 | $826.88 | $826.88 |

F1

## C21 CONTRACT TYPE 1 FUTURE FEES

### DETAILED OFFICE INFORMATION

| | | | |
|---|---|---|---|
| Office Basics: | 300178 - 0001   Status =OP | Brand: | C21 |
| Office Type: | MO | Commencement | 30-Aug-00 |
| D/B/A Office Name: | Heritage Real Estate | Contract Effective Date: | 30-Aug-00 |
| Legal Entity Name: | Heritage Real Estate | Expiration Date: | 31-Dec-14 |
| Street Address: | 3249 Mt. Diablo Boulevard Suite 101 | Early Termination | 29-Aug-06 |
| City - State - Zip: | Lafayette - CA - 94549 | Phone Number: | 925.935.9100 |

### DETAILED FUTURE FEES ANALYSIS

| | |
|---|---|
| TOTAL FEES PAID OR DUE - TRANSACTIONS | 944,038.44 |
| TOTAL FEES PAID OR DUE - NAF | 67,250.55 |
| TOTAL FEES PAID OR DUE | 1,011,288.99 |
| | |
| MONTHS WITH CURRENT | 72 |
| AVERAGE FEES PAID OR DUE PER MONTH | 14,045.68 |
| MONTHS REMAINING CURRENT | 100 |
| | |
| FUTURE FEES BEFORE | 1,406,569.07 |
| LESS DISCOUNT RATE BASED ON | (112,525.53) |
| **TOTAL FUTURE FEES DUE** | 1,294,043.54 |

# EXHIBIT Z

# REAL ESTATE FRANCHISE GROUP BALANCE REQUEST FORM

The Reason For This Balance Request: **Legal Request**

Created By - Real Estate Financial Services



## DETAILED OFFICE INFORMATION

| | | | | |
|---|---|---|---|---|
| Office Basics | 300178-0005   Status=TE   TYPE=BO | Brand - Royalty Fee | CENTURY 21 | 6.00 % |
| Owner Count - Top % | 1  Sereta Churchill  (50) | Commencement Date | July 01, 2001 | |
| D/B/A Office Name | CENTURY 21 Heritage Real Estate | Contract Effective Date | July 01, 2001 | |
| Legal Entity Name | Heritage Real Estate, Inc. | Expiration Date | December 31, 2014 | |
| Street Adress | 1983 Second Street | Last Audit Date | November 09, 2004 | |
| City, State ZIP | Livermore, CA 94550 | Last Audit Period | August 01, 2002 - August 31, 2004 | |
| Phone Number | (925) 455-0505 | Last TR Close Date | July 28, 2006 | |
| Office Email Address | relocation@C21hre.com | Last TR Paid Date | June 02, 2006 | |

## DETAILED OFFICE PRODUCTION ANALYSIS

| | | | | | |
|---|---|---|---|---|---|
| AGCI | 0.00 | Current Month - Current Year | AGCI | 0.00 | Year to Date - Current Year |
| AGCI | 221,990.00 | Current Month - Prior Year | AGCI | 786,021.85 | Year to Date - Prior Year |

## BILLED OUTSTANDING BALANCE DETAIL

| | | |
|---|---|---|
| ATRF | 0.00 | Audit Royalty Fee |
| AUI | 0.00 | Audit Interest |
| DNP | 47,221.82 | Development Note Principal |
| NAF | 7,800.00 | National Advertising Fees |
| TRF | 44,985.32 | Royalty Fee |
| TOTAL | 100,007.14 | Total Billed |

## UNBILLED OUTSTANDING BALANCE DETAIL

| | | | | | |
|---|---|---|---|---|---|
| DNP | | Development Note Principal | IFP | | Intial Franchise Note Principal |
| ENP | | Expansion Note Principal | PNP | | Promissory Note Principal |
| | | | TOTAL | | Total Notes Unbilled |

## TOTAL BILLING SUMMARY

| | |
|---|---|
| TOTAL: ALL BILLED | 100,007.14 |
| TOTAL: ALL UNBILLED | |
| LESS UNAPPLIED CASH | 0.00 |
| TOTAL: ALL BILLED AND UNBILLED DUE | |

## REAL ESTATE FINANCIAL SERVICES CONTACTS AND DATES

| | | | |
|---|---|---|---|
| Prepared By: | ZZ - C21 - Terminated () | Prepared On: | April 03, 2007 12:32 PM |
| Approved By: | *Shelly Rodriguez* (signature) | Approved On | 4/3/07 |



Questions? Call Financial Services (800) 345-2972
Make checks payable to: Century 21 Real Estate LLC
Mail payments to: 4655 Collections Center Drive
Chicago, IL 60693

# ACCOUNT SUMMARY

As Of Date: 03-APR-14

## OFFICE DETAILS

| | | | |
|---|---|---|---|
| Co-Office ID | 300178-0005 | Office Name | Heritage Real Estate |
| Office Location | 1983 Second Street<br>Livermore, CA 94550 | Billing Address | 3249 Mt. Diablo Blvd.<br>101<br>Lafayette, CA 94549 |

## BALANCE SUMMARY

| Transaction Type | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Total |
|---|---|---|---|---|---|---|
| Development Note Principa | $0.00 | $0.00 | $0.00 | $0.00 | $47,221.82 | $47,221.82 |
| National Advertising Fees | $0.00 | $0.00 | $0.00 | $0.00 | $7,800.00 | $7,800.00 |
| Royalty Fee | $0.00 | $0.00 | $0.00 | $0.00 | $44,985.32 | $44,985.32 |
| **Total** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$100,007.14** | **$100,007.14** |

## PAST DUE CHARGES

| Transaction # | Description | AGC | Transaction Date | Due Date | Days Late | Transaction Amount | Balance Due |
|---|---|---|---|---|---|---|---|
| 200601NAF00A | National Advertising Fees | | 03-FEB-06 | 23-FEB-06 | 2961 | $1,049.00 | $1,049.00 |
| 200602NAF00A | National Advertising Fees | | 03-MAR-06 | 23-MAR-06 | 2933 | $1,049.00 | $1,049.00 |
| 200603NAF00A | National Advertising Fees | | 04-APR-06 | 24-APR-06 | 2901 | $1,049.00 | $1,049.00 |
| 000000001521 | 1043 Vienna St | $20,790.00 | 28-APR-06 | 28-APR-06 | 2897 | $1,247.40 | $1,247.40 |
| 000000001535 | 568 Ranger St | $4,561.46 | 02-MAY-06 | 02-MAY-06 | 2893 | $273.69 | $273.69 |
| 200604NAF00A | National Advertising Fees | | 03-MAY-06 | 23-MAY-06 | 2872 | $1,049.00 | $1,049.00 |
| 000000001552 | 1850 Thicket Ln | $13,250.00 | 03-MAY-06 | 03-MAY-06 | 2892 | $795.00 | $795.00 |
| 000000001541 | 2364 7th St | $13,600.00 | 04-MAY-06 | 04-MAY-06 | 2891 | $816.00 | $816.00 |
| 000000001539 | 1330 Busca Dr | $6,750.00 | 08-MAY-06 | 08-MAY-06 | 2887 | $405.00 | $405.00 |
| 000000001510 | 3857 McGregor | $15,625.00 | 08-MAY-06 | 08-MAY-06 | 2887 | $937.50 | $937.50 |
| 000000001456 | 4560 Abruzzi Cir | $12,873.75 | 09-MAY-06 | 09-MAY-06 | 2886 | $772.43 | $772.43 |
| 000000001425 | 1242 Greger St | $11,560.00 | 09-MAY-06 | 09-MAY-06 | 2886 | $693.60 | $693.60 |
| 000000001551 | 6749 Tiffany Common | $16,125.00 | 12-MAY-06 | 12-MAY-06 | 2883 | $967.50 | $967.50 |
| 000000001548 | 1580 Arlington Rd | $14,750.00 | 17-MAY-06 | 17-MAY-06 | 2878 | $885.00 | $885.00 |
| 000000001517 | 532 Ranger St | $14,100.00 | 17-MAY-06 | 17-MAY-06 | 2878 | $846.00 | $846.00 |
| 000000001537 | 513 Saddleback | $18,375.00 | 19-MAY-06 | 19-MAY-06 | 2876 | $1,102.50 | $1,102.50 |
| 000000001453 | 2343 5th St | $14,175.00 | 22-MAY-06 | 22-MAY-06 | 2873 | $850.50 | $850.50 |
| 000000001566 | 1946 Nushake Way | $5,630.00 | 23-MAY-06 | 23-MAY-06 | 2872 | $337.80 | $337.80 |
| 000000001514 | 843 Cherokee Dr | $17,670.00 | 24-MAY-06 | 24-MAY-06 | 2871 | $1,060.20 | $1,060.20 |
| 000000001513 | 447 Rockingham Way | $26,125.00 | 25-MAY-06 | 25-MAY-06 | 2870 | $1,567.50 | $1,567.50 |
| 000000001574 | 1568 La Cresta | $13,781.25 | 25-MAY-06 | 25-MAY-06 | 2870 | $826.88 | $826.88 |
| 000000001481 | 4182 Middlefield | $6,280.00 | 25-MAY-06 | 25-MAY-06 | 2870 | $376.80 | $376.80 |
| 000000001491 | 1669 Whispering Wind | $6,138.80 | 26-MAY-06 | 26-MAY-06 | 2869 | $368.33 | $368.33 |
| 000000001550 | 720 Del Mar Ave | $14,875.00 | 31-MAY-06 | 31-MAY-06 | 2864 | $892.50 | $892.50 |
| 000000001577 | 3204 Islewood | $8,968.05 | 31-MAY-06 | 31-MAY-06 | 2864 | $538.08 | $538.08 |
| 000000001546 | 6220 Cedar Blvd | $8,775.00 | 02-JUN-06 | 02-JUN-06 | 2862 | $526.50 | $526.50 |
| 200605NAF00A | National Advertising Fees | | 03-JUN-06 | 23-JUN-06 | 2841 | $1,049.00 | $1,049.00 |

# Century 21 — ACCOUNT SUMMARY

Questions? Call Financial Services (800) 345-2972
Make checks payable to: Century 21 Real Estate LLC
Mail payments to: 4655 Collections Center Drive, Chicago, IL 60693

As Of Date: 03-APR-14

## OFFICE DETAILS

| | | | |
|---|---|---|---|
| Co-Office ID | 300178-0005 | Office Name | Heritage Real Estate |
| Office Location | 1983 Second Street, Livermore, CA 94550 | Billing Address | 3249 Mt. Diablo Blvd. 101, Lafayette, CA 94549 |

| ID | Description | Amount | Date 1 | Date 2 | Ref | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 000000001501 | 502 Ranger St | $4,875.00 | 05-JUN-06 | 05-JUN-06 | 2859 | $292.50 | $292.50 |
| 000000001502 | 550 Ranger St | $4,485.00 | 05-JUN-06 | 05-JUN-06 | 2859 | $269.10 | $269.10 |
| 000000001519 | 4593 Crabapple Ct | $21,000.00 | 05-JUN-06 | 05-JUN-06 | 2859 | $1,260.00 | $1,260.00 |
| 000000001567 | 4231 Cherry Blossom | $6,450.00 | 06-JUN-06 | 06-JUN-06 | 2858 | $387.00 | $387.00 |
| 000000001569 | 1981 Coriander | $15,000.00 | 09-JUN-06 | 09-JUN-06 | 2855 | $900.00 | $900.00 |
| 000000001518 | 4372 Middlefield | $6,320.00 | 13-JUN-06 | 13-JUN-06 | 2851 | $379.20 | $379.20 |
| 000000001572 | 1825 Milpas Ln | $8,450.00 | 13-JUN-06 | 13-JUN-06 | 2851 | $507.00 | $507.00 |
| 000000001602 | 288 Wildberry Dr | $12,250.00 | 14-JUN-06 | 14-JUN-06 | 2850 | $735.00 | $735.00 |
| 000000001549 | 1184 Sunset Dr | $14,125.00 | 14-JUN-06 | 14-JUN-06 | 2850 | $847.50 | $847.50 |
| 000000001586 | 59 Cassady Ct | $16,975.00 | 15-JUN-06 | 15-JUN-06 | 2849 | $1,018.50 | $1,018.50 |
| 000000001603 | 1871 Holland Dr | $13,250.00 | 16-JUN-06 | 16-JUN-06 | 2848 | $795.00 | $795.00 |
| 000000001578 | 17 Aspinwall Ct | $21,875.00 | 20-JUN-06 | 20-JUN-06 | 2844 | $1,312.50 | $1,312.50 |
| 000000001592 | 846 Avalon Way | $15,500.00 | 20-JUN-06 | 20-JUN-06 | 2844 | $930.00 | $930.00 |
| 000000001575 | 374 Charlotte | $15,450.00 | 21-JUN-06 | 21-JUN-06 | 2843 | $927.00 | $927.00 |
| 000000001591 | 990 Roxanne St | $18,780.00 | 22-JUN-06 | 22-JUN-06 | 2842 | $1,126.80 | $1,126.80 |
| 000000001547 | 50 Terraced Hills Way | $15,697.50 | 23-JUN-06 | 23-JUN-06 | 2841 | $941.85 | $941.85 |
| 000000001544 | 5469 Arlene Way | $15,883.83 | 23-JUN-06 | 23-JUN-06 | 2841 | $953.03 | $953.03 |
| 000000001573 | 1709 Concord Ct | $10,600.00 | 26-JUN-06 | 26-JUN-06 | 2838 | $636.00 | $636.00 |
| 000000001579 | 47 Trinity Cir | $14,800.00 | 27-JUN-06 | 27-JUN-06 | 2837 | $888.00 | $888.00 |
| 000000001605 | 1180 spring valley | $10,625.00 | 28-JUN-06 | 28-JUN-06 | 2836 | $637.50 | $637.50 |
| 000000001606 | 6750 Paseo San Leon | $18,950.00 | 28-JUN-06 | 28-JUN-06 | 2836 | $1,137.00 | $1,137.00 |
| 000000001600 | 749 Hanover St | $18,450.00 | 29-JUN-06 | 29-JUN-06 | 2835 | $1,107.00 | $1,107.00 |
| 000000001608 | 2455 Wood Hollow Dr | $39,375.00 | 29-JUN-06 | 29-JUN-06 | 2835 | $2,362.50 | $2,362.50 |
| 200606NAF00A | National Advertising Fees | | 03-JUL-06 | 23-JUL-06 | 2811 | $1,096.00 | $1,096.00 |
| 000000001619 | 1871 Orchard | $21,180.00 | 05-JUL-06 | 05-JUL-06 | 2829 | $1,270.80 | $1,270.80 |
| 000000001599 | 3231 Vineyard Ave | $4,398.00 | 05-JUL-06 | 05-JUL-06 | 2829 | $263.88 | $263.88 |
| 000000001588 | 921 Central Blvd | $11,250.00 | 05-JUL-06 | 05-JUL-06 | 2829 | $675.00 | $675.00 |
| 000000001629 | 4225 Clarinbridge | $12,312.50 | 11-JUL-06 | 11-JUL-06 | 2823 | $738.75 | $738.75 |
| 000000001581 | 306 Clarke Ave | $14,325.00 | 12-JUL-06 | 12-JUL-06 | 2822 | $859.50 | $859.50 |
| 000000001630 | 426 N O | $22,500.00 | 14-JUL-06 | 14-JUL-06 | 2820 | $1,350.00 | $1,350.00 |
| 000000001526 | 1375 Via D'Este | $4,750.00 | 19-JUL-06 | 19-JUL-06 | 2815 | $285.00 | $285.00 |
| 000000001614 | 21002 Francis | $15,625.00 | 21-JUL-06 | 21-JUL-06 | 2813 | $937.50 | $937.50 |
| 000000001631 | 1212 Buzzini Ct | $19,470.00 | 28-JUL-06 | 28-JUL-06 | 2806 | $1,168.20 | $1,168.20 |
| 200607NAF00A | National Advertising Fees | | 03-AUG-06 | 23-AUG-06 | 2780 | $1,096.00 | $1,096.00 |
| 200608NAF00A | National Advertising Fees | | 03-SEP-06 | 23-SEP-06 | 2749 | $363.00 | $363.00 |
| 000841314438 | Development Note | | 16-APR-07 | 06-MAY-07 | 2524 | $9,444.37 | $9,444.37 |
| 000841414431 | Development Note | | 15-APR-08 | 05-MAY-08 | 2159 | $9,444.37 | $9,444.37 |
| 000841514424 | Development Note | | 15-APR-09 | 05-MAY-09 | 1794 | $9,444.37 | $9,444.37 |

# ACCOUNT SUMMARY

**Century 21**

Questions? Call Financial Services (800) 345-2972
Make checks payable to: Century 21 Real Estate LLC
Mail payments to: 4655 Collections Center Drive
Chicago, IL 60693

As Of Date: 03-APR-14

## OFFICE DETAILS

| Co-Office ID | 300178-0005 | Office Name | Heritage Real Estate |
|---|---|---|---|
| Office Location | 1983 Second Street<br>Livermore, CA 94550 | Billing Address | 3249 Mt. Diablo Blvd.<br>101<br>Lafayette, CA 94549 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 000841614417 | Development Note | | 15-APR-10 | 05-MAY-10 | 1429 | $9,444.37 | $9,444.37 |
| 000841714410 | Development Note | | 15-APR-11 | 05-MAY-11 | 1064 | $9,444.34 | $9,444.34 |
| | | | | | **Total past due charges** | **$100,007.14** |